IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEAN CHASE, | § § § | |
| *Plaintiff*, | § § | |
| vs. | § § § | Civil No. 1:20-CV-175-RP |
| RYAN E. HODGE, HELPING HANDS CAPITAL, LLC, and STEPHANIE HODGE, | § § § § § | |
| *Defendants*. | § | |

___

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
___

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Dean Chase ("Chase") and files his First Amended Complaint, respectfully showing unto the Court as follows:

### I.   Parties, Service of Process, and Jursidiction

1.  Plaintiff Chase is a resident of Florida.

2.  Defendant **Ryan E. Hodge ("Hodge")** is a resident of the state of Kansas and has appeared herein.

3.  Defendant, **Stephanie Hodge** is a resident of the state of Kansas and has agreed to waive service of process.

4.  **Helping Hands Capital, LLC ("Helping Hands" or "Company")** is a Texas Limited Liability Company and has appeared herein.

5.  This Court has subject-matter jurisdiction over this case because there is more

1

than $75,000.00 in controversy and the parties have diverse states of residence.

6.      This Court has personal jurisdiction over Helping Hands Capital, LLC, because it is a Texas limited liability company.  The Court has personal jurisdiction over Stephanie and Ryan Hodge because of their continuous and systematic contacts with Texas sufficient to give rise to general jurisdiction and because the causes of action asserted herein arose out of some of those contacts sufficient to create specific jurisdiction over them.

## II.  Facts

7.      In 2013, Plaintiff Dean Chase ("Chase"), Defendant Hodge, and Mark Guedri ("Guedri") decided to start a business to provide loans to litigants with said loans being secured by the future proceeds of any lawsuit settlement.  At the time, the three gentlemen were partners in a separate business, known as HMR, that provided case expense loans, and each saw the need for this additional service.

8.      Hodge, as attorney for Chase and Guedri, was to form an entity.  The parties agreed to treat the company as an equal partnership in which each owned one third of the company.  The three agreed that all profits from the company would be distributed on this basis.

9.      Hodge then formed Helping Hands Capital, LLC, as a Texas limited liability company on March 28, 2013.  Hodge was listed on the Certificate of Formation as the Managing Member of Helping Hands, but he omitted Chase and Guedri from the filing.

10.     The initial Company Agreement listed Hodge as 100% owner of the 10,000 member units of the Company issued and outstanding as of March 28, 2013.  Despite Plaintiff trusting his friend, partner, and attorney to follow through with the parties' agreement, Hodge did not include Plaintiff or Guedri on the Company Agreement.

11.     The Company started operations in 2013 and by September 4, 2014, Helping

Hands hit $1 million in deployed funds and had net accounts receivable of $150,000.00.

12. Between 2013 through 2016 the Company focused on growth and typically reinvested profits into the Company. However, when funds were occasionally distributed to the three partners, it was always on the same basis as initially agreed upon – a third to each partner.

13. In 2016, Guedri tendered his interest back to the Company and Hodge acknowledged to Chase in writing that going forward they were "50/50 partners." During the timeframe of 2016 and 2017, distributions to Hodge and Chase were allegedly made on a 50/50 basis. Up to the 2017 timeframe, Hodge had always been forthcoming with financial information of the Company, and Chase and Hodge worked together to further the interests of the Company.

14. In early 2018, Chase began pressing Hodge for financial information on the Company. On April 26, 2018, Hodge sent a communication to Chase advising—for the first time—that Chase's interest in the Company was an "economic benefit only" and not "legal ownership." He instructed Chase to cease telling third parties that he (Chase) was an owner of the Company, despite Hodge having mentioned to third parties on countless occasions that Chase was his "partner" and an "owner of Helping Hands." Hodge also asserted for the first time in 2018 that the Company was "owned 100% by a trust" and that Hodge had no ownership in Helping Hands himself. It was during this timeframe that Hodge began excluding Chase from the business.

15. On May 13, 2018, Hodge and Chase met in Washington, DC to try to resolve their issues regarding Helping Hands. During this meeting Hodge again assured Chase that each were "50/50 partners" in Helping Hands and each would continue to work to realize solid growth and an exit strategy for the Company in order to reap the rewards of their many years of sacrifice in

building the Company. Following the meeting, Chase requested he be provided with all information and documents pertaining to Helping Hands since its inception and requested "complete and unlimited access" to Helping Hands' books and records on a go forward basis. Chase requested that this information be provided on or before June 1, 2018; however, said information was never provided by Hodge.

16. On January 11, 2019, Hodge forwarded "preliminary financials" to Chase, and Chase requested further documentation be provided to a forensic accountant. Hodge refused.

17. Throughout 2019, Chase tried to resolve the issues with Hodge. However, on September 26, 2019, Hodge sent an email to Chase wherein he offered to buyout Chase's "interests" in Helping Hands for $25,000.00 or otherwise threatened to "transfer" his money out of Helping Hands and sell the assets and wind down the Company. This offer was patently disingenuous, because the company has made and received millions of dollars in loans over the past two years.

18. Chase is now aware that Hodge has been involved in a hotly contested divorce and fears that Hodge may be wasting or transferring assets and revenues of the Company in an effort to hide the money from both Chase and Hodge's ex-wife. It has now come to light that Defendant Ryan Hodge has engaged in a consistent scheme of self-dealing, usurpation of corporate opportunities, and wasting of company assets.

### III.  Causes of Action

19. All conditions precedent to Chase's recovery have occurred or have been waived, excused, or otherwise satisfied. All notices required have been provided or waived, excused, or otherwise satisfied.

**A.**     **Breach of Fiduciary Duty**

20. Defendant Ryan Hodge (i) is an officer and Manager of Helping Hands Capital, LLC, (ii) exercised dominant control over the Company and its finances, and (iii) excluded Plaintiff from the Company's business. As a result, Hodge was a fiduciary of Plaintiff.

21. Defendant Ryan Hodge also owed Plaintiff a fiduciary duty because:

   a) He served as Plaintiff's attorney in Texas in connection with the formation and launch of the business that became Helping Hands;

   b) He served as Plaintiff's attorney for business and personal matters in Texas before the formation of Helping Hands;

   c) He entered into a *de facto* partnership with Plaintiff to carry out a litigation funding business in Texas; and

   d) He was Plaintiff's partner in businesses that existed in Texas prior to the formation of Helping Hands and its business.

22. Hodge thus owed Plaintiff a high duty of care, free of negligence, and coupled with the utmost of fidelity, good faith, and fair dealing, devoid of any misrepresentation or deceit. Because he owed Plaintiff such duties, a presumption of unfairness attaches to the transactions committed by Defendants, which cannot be overcome unless Defendants prove:

   a) Each transaction was fair and equitable to Plaintiff;

   b) Hodge made reasonable use of the confidence Plaintiff placed in Hodge;

   c) Hodge acted with the utmost good faith and executed the most scrupulous honesty toward Plaintiff;

   d) He placed Plaintiff's interests above his own;

   e) Hodge did not place himself in any position in which his self-interest might conflict with his obligations as fiduciary; and

  f) Hodge fully and fairly disclosed in a timely manner all material information concerning the Company to Plaintiff.

23. Defendants cannot prove any of these requirements. Indeed, the opposite is true in each and every case. Thus, the transactions at issue are tainted with breaches of fiduciary duty. As a result, Defendants must disgorge any benefits they received from Hodge's breach of fiduciary duty, including the return of any fees, payments, and/or other financial benefits they received.

24. Defendant Ryan Hodge breached his fiduciary duty to Plaintiff in the following respects:

  a) On information and belief, Defendant Ryan Hodge usurped business opportunities from Helping Hands Capital, LLC, funneling them to himself, his wife, or companies or partners with which they were affiliated. Defendant Ryan Hodge entered into partnerships personally and/or through his law firm with clients and contacts of Plaintiff rather than sharing those opportunities with the partnership.

  b) Defendant Ryan Hodge engaged in self-dealing when, unbeknownst to Plaintiff, he named himself the 100% owner of Helping Hands and deliberately omitted Plaintiff from Helping Hands' corporate documents.

  c) Defendant Ryan Hodge engaged in self-dealing when he transferred ownership of Helping Hands to a Nevada Trust in an unabashed attempt to move Plaintiff's ownership interest in the partnership out of his reach.

  d) Defendant Ryan Hodge engaged in self-dealing by causing the Helping Hands business to pay exorbitant fees to his law firm, thereby reducing the

       expenses of the law firm without providing reasonable value to Helping Hands.

  e) Unbeknownst to Plaintiff, Defendant Ryan Hodge transferred proceeds from an SBA loan to a Nevada entity controlled by Plaintiff and then back to Helping Hands to disguise the use of the funds from the SBA.

  f) Defendant Ryan Hodge deliberately refused to provide Plaintiff information about the business and deliberately stopped making distributions of cash to Plaintiff, but continued to pay himself.

  g) Defendant Ryan Hodge took financial assets of the business and transferred them to Fund V without the knowledge or approval of Plaintiff, negotiating a deal more favorable to Defendants than to Plaintiff.

  h) Defendant Ryan Hodge usurped business opportunities of Helping Hands by creating an entity called Fidelity Finance and arranging credit facilities for that company rather than Helping Hands directly.

  i) On information and belief, Defendant Ryan Hodge has transferred cash from the Helping Hands accounts to a Trust or Trusts in Nevada, either directly or through an intermediary company.

  j) Defendant Ryan Hodge has manipulated the books of Helping Hands to take profits out of the business as "expenses," thereby decreasing the amounts owed to Plaintiff under the terms of the parties' joint venture or partnership agreement.

25. Defendant Ryan Hodge's actions constitute intentional breaches of his fiduciary duty tantamount to constructive and actual fraud. As a result, Plaintiff is entitled to all actual,

consequential, special, and/or rescission damages in an amount to be proven at trial.

26.     Defendant Ryan Hodge's actions also warrant the imposition of punitive and exemplary damages because his actions were intentional and committed with malice.

### B.     Knowing Participation in Breach of Fiduciary Duty

27.     Defendants Stephanie Hodges and Helping Hands Capital, LLC, were both aware that Defendant Ryan Hodge owed Plaintiff a fiduciary duty.  Both were aware of his breaches of duty described above and knowingly participated in some or all of them.

28.     Plaintiff is entitled to all actual, consequential, special, or rescission damages from the Defendants in an amount to be proven at trial.

29.     Plaintiff is also entitled to punitive and exemplary damages as a result of Defendants' intentional and malicious conduct.

### C.     Breach of Contract

30.     Chase and Hodge entered into a contract to combine their efforts to make loans to finance litigation and split the profits that came from those efforts.  Chase performed, tendered performance, or was excused from performing under the contract.  Hodge materially breached the contract by failing to pay Chase his share of the profits of the endeavor, and Chase has suffered damages as a natural, probable, and foreseeable result of such breach.

31.     Chase seeks judgment against Hodge for actual damages, special damages, consequential damages, lost profits, costs of mitigation, pre- and post-judgment interest, court costs, and attorneys' fees under the common law and under Chapter 38.001 of the Texas Business & Commerce Code.

### D.     Violations of the Texas Securities Act

32.     Plaintiff asserts this cause of action for violations of the Texas Securities Act,

Tex. Rev. Civ. Stat. Ann. Art. 581-1 et seq., and in particular Art. 581-33 of the Texas Securities Act, against Defendants Ryan Hodge and Helping Hands Capital, LLC.

33. Art. 581-33(A)(2) of the Texas Securities Act provides that any person (person is defined to include individuals or companies) "who offers or sells a security by means of an untrue statement of material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, is liable to the person selling the security to him."

34. Plaintiff's ownership interests in Helping Hands Capital, LLC, are "securities" within the meaning of the Texas Securities Act.

35. Defendant Hodge promised Plaintiff that Hodge would (a) provide ample capital for Helping Hands Capital, LLC, to operate; (b) use Chase's contacts—both lawyers seeking loans and investors providing capital—to fund litigation loans through Helping Hands Capital, LLC; (c) engage in the business of providing litigation financing through Helping Hands Capital, LLC; and (d) split the profits from the litigation funding business with Chase. At the time these promises were made, Chase knew them to be false and never intended to comply with them.

36. But for the promises made by Hodge, Chase would not have agreed to form Helping Hands Capital or to do business with Hodge. Chase relied on the honesty and integrity of Hodge's promises in moving forward with the business, and was damaged as a result.

37. By reason of the foregoing, Defendants have violated, conspired with each other to violate, and/or aid and abet, violations of Article 581-33 of the Texas Securities Act by making promises that were untrue at the time they were made.

38. Helping Hands Capital, LLC, was a "seller" of securities. Defendant Ryan Hodge was an "aider and abettor."

39. By reason of the foregoing misrepresentations and omissions, Defendants Ryan Hodge and Helping Hands violated, aided, abetted or controlled another who violated Article 581-33 of the Texas Securities Act and the Defendants are jointly and severally liable to Plaintiff.

40. Plaintiff has suffered substantial damages as a result of Defendants' acts and is entitled to all damages, relief and attorneys' fees permitted by the Texas Securities Act.

**E.   Fraud**

41. Defendant Ryan Hodge promised Plaintiff that Hodge would (a) provide ample capital for Helping Hands Capital, LLC, to operate; (b) use Chase's contacts—both lawyers seeking loans and investors providing capital—to fund litigation loans through Helping Hands Capital, LLC; (c) engage in the business of providing litigation financing through Helping Hands Capital, LLC; and (d) split the profits from the litigation funding business with Chase. The above promises were made to Chase by Ryan Hodge when Chase was living in Texas during the planning and formation of Helping Hands Capital, LLC. At the time these promises were made, Hodge knew them to be false and never intended to comply with them. Hodge made the promises with the specific intent that they induce Chase to bring his contacts to Helping Hands and to invest time and effort in building Helping Hands' business. They were promises material to the formation of the business, and it was reasonable for Chase to rely on the promises in light of the parties pre-existing relationship.

42. But for the promises made by Hodge, Chase would not have agreed to form Helping Hands Capital or to do business with Hodge. Chase relied on the honesty and integrity of Hodge's promises in moving forward with the business, and was damaged as a result.

43. Because these false promises were made in a stock transaction, Defendants Ryan

Hodge and Helping Hands have violated, conspired with each other to violate, and/or aid and abet, violations of Chapter 27 of the Texas Business & Commerce Code.

44. Plaintiff suffered damages from Defendants' frauds, for which he now sues. In addition to Plaintiff's significant financial losses, Plaintiff seeks exemplary damages as a result of Defendants fraudulent and malicious conduct.

45. Pursuant to Section 27.01, of the Business & Commerce Code, Plaintiff seeks exemplary damages and the recovery of his reasonable and necessary attorneys' fees.

**F.     Declaratory Judgment**

46. Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code and 28 U.S.C. § 2201, Plaintiff seeks a judgment declaring his rights on an ongoing basis.

47. Defendants Ryan Hodge and Helping Hands have taken the position that Plaintiff does not have rights in connection with his ownership of the Company. To settle these disputes for the future, Plaintiff seeks a declaration that:

   a. Dean Chase is a Member of Helping Hands Capital, LLC;
   b. Dean Chase owns 50% of the Membership Interests of Helping Hands Capital, LLC;
   c. Dean Chase is entitled to 50% of all profits of Helping Hands Capital, LLC;
   d. Plaintiff and Defendant Ryan Hodge entered into a general partnership to conduct litigation funding activities under Texas law;
   e. Plaintiff and Defendant Ryan Hodge entered into a joint venture to conduct litigation funding activities under Texas law;
   f. Defendant Ryan Hodge owes a fiduciary duty to Dean Chase;

  g. Defendant Ryan Hodge and Helping Hands may not usurp opportunities of the partnership or joint venture by engaging in litigation funding activities to the exclusion of Plaintiff in the future

  h. Fund V was a business opportunity of the parties' partnership and Helping Hands; and

  i. Plaintiff has an ongoing right to review the books and records of Helping Hands and any other litigation funding activities conducted by Ryan Hodge.

48.  Pursuant to CPRC § 37.009, Plaintiff further seeks to recover his attorneys' fees incurred in having to seek this declaratory judgment.

### G.  Appointment of a Receiver

49.  Plaintiff asks that the Court immediately appointment a temporary receiver that will for sixty (60) days marshal and take control of Helping Hands Capital, LLC. Appointing a temporary receiver will provide the management necessary to prevent additional material injury and irreparable harm to the Company, resulting from the deadlock of the owners and the usurping actions of Defendants.

50.  The Court may appoint a receiver "in an action between partners or others jointly owning or interested in any property or fund" when (1) the party applying for the receivership has "a probable interest in or right to the property or fund" and (2) the property or fund is "in danger of being lost, removed, or materially injured." TEX. CIV. PRAC. & REM. CODE § 64.001(a)(3), (b). The facts and circumstances of the present situation warrant the appointment of a temporary receiver.

51.  ***Plaintiff has a probable interest in the Company because Defendant Hodge has***

***admitted Chase is a 50% owner.*** As noted *supra*, Plaintiff was always a 33.33% owner of the business, but became the 50% owner when Mark Guedri left the business. As a result, Plaintiff has a probable interest in the business. *See, e.g., M. Guerra & Son v. Manges*, 442 S.W.2d 441, 445 (Tex. App.—Waco 1969, writ dismissed) ("Plaintiff Manges acquired an interest in the ranch lands owned by M. Guerra & Son by warranty deeds from J. C. Guerra and Virgil H. Guerra, two of the general partners, and as such, acquired for the purposes of this suit for receivership and partition, at least a probable interest in such lands.").

52. ***The Companies are in danger of being materially injured because of deadlock and usurpation.*** Because Plaintiff has no control over the Company, he has relied on Hodge to manage them fairly and reasonably and in good faith and to provide Plaintiff with information regarding the Company's operations. However, Defendant Hodge has failed to provide Plaintiff with an accounting of the Company's income, profits, debts and general management. Plaintiff recently learned that: (1) Hodge has provided Helping Hands money to Fund V, a company in which Mr. Hodge has an ownership interest; (2) Hodge has created a separate entity, called Fidelity Finance, and moves assets of Helping Hands to and from that entity; (3) Hodge routinely pays money from Helping Hands to his law firm; (4) Hodge uses Helping Hands funds to pay school tuition and/or to purchase goods and services for his children; and (5) Helping Hands incurred an additional $2.5 million of debt in 2020.

53. Plaintiff has made repeated attempts to obtain documents and information pertaining to the Company but has failed. Plaintiff has attempted to request the records from Defendant Hodge and Helping Hands Capital directly. Despite his efforts, to date, Plaintiff has not been able to obtain sufficient information to analyze the financial status of the Company.

54. Plaintiff has no adequate remedy at law other than for this Court to appoint a

temporary receiver to marshal and account for the funds and assets of the Company. Unless a temporary receiver is appointed over Company and its assets, Defendant Hodge's usurpation, mismanagement, and/or defalcation will result in the dissipation and loss of the Company's assets.

55.   This Court should issue an order, before notice and hearing, appointing a temporary receiver for sixty (60) days. The receiver should be given all powers necessary to protect the Companies. Defendants Ryan Hodge and Helping Hands Capital should be ordered to provide to the Receiver all of the accounts and books and records of the Company, including a list of all parties that have received loans from the Company, with their address and telephone numbers.

56.   Plaintiff respectfully recommends that the Court appoint Michael Napoli, of the Ackerman Law Firm to serve as Receiver. Mr. Napoli is a resident of Texas, is qualified to vote in Texas, is licensed as an attorney in Texas, has significant experience as a Receiver over assets and companies that have been the victim of fraud and/or usurpation. He has served as counsel for multiple Receiverships during the past 10+ years. Mr. Napoli has no connection to Plaintiff or Defendants, has no financial interest in these proceedings, and has agreed to serve as Receiver.

## IV. Prayer

WHEREFORE, PREMISES CONSIDERED, Chase prays all defendants be cited to appear, and judgment be entered in favor of Chase and against all defendants, jointly and severally where appropriate, awarding Chase all relief requested herein as well as all such other and further relief, both general and special, at law or in equity, to which Chase may be entitled.

## JURY DEMAND

Plaintiff demands a trial by jury and has tendered the requisite fee. Plaintiff does not consent to trial before a Magistrate Judge.

Date: July 31, 2020                             Respectfully submitted,

**SCHMIDT LAW FIRM, PLLC**

By: _____
C. Thomas Schmidt
Texas Bar No. 00797386
firm@schmidtfirm.com
7880 San Felipe, Suite 210
Houston, TX 77063
Tel. 713-568-4898

**ATTORNEYS FOR PLAINTIFF**

**TURNBULL LAW FIRM, P.C.**

Brett Turnbull
Texas Bar No. 24117282
bturnbull@turnbullfirm.com
2 20th Street North, Suite 1600
Birmingham, AL 35203
Tel. (205) 831-5040

**ATTORNEYS FOR PLAINTIFF**

**WHITEHURST, HARKNESS, BREES, CHENG, ALSAFFAR, HIGGINBOTHAM, & JACOB PLLC**

Michelle M. Cheng
Texas State Bar 00796345
mcheng@nationaltriallaw.com
7500 Rialto Boulevard
Building Two, Suite 250
Austin, Texas 78735
Tel. (512) 4764346

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

   I certify that a true and correct copy of this document was delivered on July 20, 2020, in accordance with Rule 5(b)(2) of the Federal Rules of Civil Procedure, to the parties listed and in the manner indicated below.

Randy R. Howry                     *Electronic Service*
rhowry@howrybreen.com
James C. Hatchitt
jhatchitt@howrybreen.com
Ryan D. Ellis
rellis@howrybreen.com
1900 Pearl Street
Austin, Texas 78705-5408
Tel. (512) 474-7300
Fax (512) 474-8557

Attorneys for Defendants Helping
Hands Capital, LLC, and Ryan Hodge

                         _____
                         C. Thomas Schmidt