**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **DEAN CHASE** | § | |
| | § | |
| **V.** | § | **1: 20-cv-0175-RP** |
| | § | |
| **RYAN HODGE, et al.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Helping Hands Capital, LLC's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 56); Defendant Ryan E. Hodge's Rule 12(b) Motion to Dismiss (Dkt. No. 60); Plaintiff's Response (Dkt. No. 64); and Defendants' Reply (Dkt. No. 67). The District Court referred the motions to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(c) of Appendix C of the Local Court Rules.

## I. BACKGROUND

This case involves a dispute about the ownership of Texas limited liability company Helping Hands Capital, LLC. Helping Hands provides non-recourse living expenses for parties involved in personal injury claims and suits. Helping Hands was formed in 2013, with Ryan Hodge, an attorney licensed in and residing in Kansas, as its sole member. Dean Chase, a Florida citizen, asserts claims against Hodge, Hodge's then-spouse Stephanie, and Helping Hands.  Chase filed the suit in Travis County district court, and Defendants removed it to federal court based on diversity.

The dispute focuses on Chase's alleged ownership interest in Helping Hands. The following facts are taken from Chase's First Amended Complaint. Dkt. No. 54. Chase asserts that in 2013, Ryan Hodge, Chase and another individual who is not a party, Mark Guedri, decided to start a

business to provide loans to litigants, which would be secured by the future proceeds of any lawsuit settlement. At the time, the three were partners in a separate business, HMR, that provided case expense loans. Chase maintains that Hodge, acting as an attorney for Chase and Guedri, formed the new entity, and that the parties agreed to treat it as an equal partnership in which each owned one third of the company, and would share profits in thirds as well. On March 28, 2013, Hodge formed Helping Hands Capital, LLC, as a Texas limited liability company ("Company"), listing himself on the Certificate of Formation as the Managing Member, but making no mention of Chase or Guedri in the filing.

From 2013 through 2016 the Company typically reinvested profits into the Company; however, when funds were occasionally distributed to the three partners, it was always on the same one-third basis as initially agreed upon. In 2016, Guedri tendered his interest back to the Company. Chase asserts Hodge acknowledged to Chase in writing that going forward they were "50/50 partners." In 2016 and 2017, distributions to Hodge and Chase were allegedly made on a 50/50 basis. Chase alleges that up to 2017, Hodge was always forthcoming with financial information on the Company, and Chase and Hodge worked together to further the interests of the Company. In early 2018, Chase began pressing Hodge for financial information on the Company. On April 26, 2018, Hodge sent a communication to Chase advising that Chase's interest in the Company was an "economic benefit only" and not "legal ownership." Chase alleges that Hodge instructed Chase to cease telling third parties that he (Chase) was an owner of the Company, despite Hodge having mentioned to third parties on countless occasions that Chase was his "partner" and an "owner of Helping Hands."

Chase contends that Hodge asserted for the first time in 2018 that the Company was "owned 100% by a trust" and that Hodge had no ownership in Helping Hands himself. It was during this timeframe that Chase alleges Hodge began excluding Chase from the business. On May 13, 2018, Hodge and Chase met in Washington, DC to try to resolve their issues regarding Helping Hands. Chase alleges that during this meeting Hodge again assured Chase that each were "50/50 partners" in Helping Hands and each would continue to work to realize solid growth and an exit strategy for the Company in order to reap the rewards of their many years of sacrifice in building the Company. Following the meeting, Chase requested he be provided with all information and documents pertaining to Helping Hands since its inception and requested "complete and unlimited access" to Helping Hands' books and records on a going forward basis. Chase requested that this information be provided on or before June 1, 2018.  Hodge, however, never provided the information.

On January 11, 2019, Hodge forwarded "preliminary financials" to Chase, and Chase requested further documentation be provided to a forensic accountant. Hodge refused. Throughout 2019, Chase tried to resolve the issues with Hodge.  Then, on September 26, 2019, Hodge emailed Chase and offered to buy Chase's "interests" in Helping Hands for $25,000, or otherwise he would "transfer" his money out of Helping Hands and sell the assets and wind down the Company. Chase argues this offer was patently disingenuous, because the company has made and received millions of dollars in loans over the past two years.

In his First Amended Complaint, Chase asserts that Hodge has been involved in a hotly contested divorce and fears that Hodge may be wasting or transferring assets and revenues of the Company in an effort to hide the money from both Chase and Hodge's ex-wife, Stephanie Hodge, who is also named as a defendant in this case. He argues that Hodge has engaged in a consistent

scheme of self-dealing, usurpation of corporate opportunities, and wasting of company assets. In turn, Hodge and Helping Hands assert that Chase has never been a member of Helping Hands, that he was compensated similarly to a contractor, and he is not entitled to relief on his claims. Additionally, Helping Hands argues that Chase has failed to name Chase First Chance Trust II, Helping Hands' sole member, as a party to this case; and that therefore, the Court may not award ownership of Helping Hands to Chase pursuant to Rule 19(a)(1).

Chase asserts claims against Ryan Hodge for: (1) breach of fiduciary duty; (2) breach of contract; (3) violations of the Texas Securities Act; (4) common law and statutory fraud; (5) a declaration of Chase's rights in Helping Hands; and (6) the appointment of a receiver.  He sues Helping Hands for  (1) violations of the Texas Securities Act; (2) knowing participation in breach of fiduciary duty; (3) statutory fraud; (4) a declaration of Chase's rights in Helping Hands; and (5) appointment of a receiver.[1]  Helping Hands, LLC and Ryan Hodge separately move to dismiss Chase's claims against them. Helping Hands asserts Chase  has failed to state a claim. Ryan Hodge argues that the Court lacks personal jurisdiction over him; and alternatively, that Chase has failed to state a claim against him.[2]

## II. LEGAL STANDARDS

### A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of a plaintiff's claims before filing its answer when the pleadings, on their face, fail "to state a claim upon

---

[1]Chase also sues Stephanie Hodge, asserting the sole claim that she knowingly participated in a breach of fiduciary duty.

[2] Hodge does not move to dismiss Chase's breach of contract claim.

which relief can be granted." A pleading states a claim for relief when, inter alia, it contains "a short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a Rule 12(b)(6) motion, a court may rely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). A court must accept as true all factual allegations, although the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678.

**B.      Rule 12(b)(2)**

Rule 12(b)(2) authorizes the court to dismiss an action for lack of personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). When a defendant files a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant. *Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.2006), citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir.1982). At the pretrial stage of litigation, if the district court does not conduct a hearing on personal jurisdiction, the plaintiff need only present a prima facie case of personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.) *cert. denied*, 513 U.S. 930 (1994); *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Proof by preponderance of the evidence is not required. *Johnston*, 523 F.3d at 609.

## III. ANALYSIS

**A.      Ryan Hodge's 12(b)(2) and 12(b)(6) Motion to Dismiss**

**1.      Personal Jurisdiction**

Ryan Hodge moves to dismiss the claims against him pursuant to Rule 12(b)(2), arguing the Court does not have personal jurisdiction over him based upon his lack of minimum contacts with Texas.   "A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if: (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). Because the Texas long-arm statute "extends as far as constitutional due process allows," it is only necessary to consider the second inquiry. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *see Alexander v. Greenwood Hall, Inc*., 2019 WL 2913953, at *6 (S.D. Tex. July 8, 2019) ("Since the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.").

A plaintiff bears the overall burden of establishing jurisdiction over a non-resident and may meet this burden "by presenting a prima facie case that personal jurisdiction is proper." *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). When a defendant disputes factual bases for personal jurisdiction, the district court may consider the record before it, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002). The court has discretion as to the type and amount of jurisdictional discovery it will allow, but unless there is a full and fair hearing, it should not act as a factfinder and must construe all disputed facts in favor of the plaintiff.

*Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008); *Dontos v. Vendomation NZ Ltd.*, 582 F. Appx 338, 342 (5th Cir. 2014) (per curiam)); *accord Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (noting that the "court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction").

      a.      **Fiduciary Shield Doctrine**

 Before analyzing Hodge's minimum contacts, the Court addresses Hodge's argument that the Court cannot exercise jurisdiction over him because of the "fiduciary shield doctrine." That doctrine states that "[t]he general rule is that jurisdiction over an individual cannot be predicated on jurisdiction over a corporation; the fiduciary-shield which cloaks corporate agents and officers usually prevents a court from attributing actions made on behalf of the corporation to the agents or officers who performed them." *Intermed Laboratories, Inc. v. Perbadanan Geta Felda*, 898 F. Supp. 417, 420 (E.D. Tex. 1995) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985)). Hodge argues that, "allegations that Ryan Hodge formed Helping Hands in Texas, or that he communicated with individuals or entities in Texas related to Helping Hands, or that he traveled to Texas in connection with Helping Hands business, cannot form the basis for exercising personal jurisdiction over Ryan Hodge individually." Dkt. No. 60 at 22.

      Chase responds that the fiduciary shield doctrine is inapplicable in the context of jurisdictional analysis under the Due Process Clause. *See Calder v. Jones*, 465 U.S. 783 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984). While the Court agrees, to date the Fifth Circuit has not addressed this precise issue. However, in *Donovan v. Grim Hotel Company*, the Fifth Circuit, applying *Calder*, refused to find the fiduciary shield doctrine prevents Texas

plaintiffs from bringing a wage-and-hour lawsuit against an out-of-state owner of five hotels who

hired the Texas employees to manage those hotels. 747 F.2d 966, 973–74 & n. 10 (5th Cir. 1984);

*see also Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed. App'x. 775, 793–95 (5th

Cir. 2007) (unpublished) (applying *Donovan* and holding corporate officer who circulated allegedly

fraudulent franchise circulars in Texas could not avail himself of fiduciary-shield doctrine although

other corporate officers who did not direct contacts at Texas could and opining that "neither Texas

or federal law allowed the defendant to hide behind his corporate status"). More importantly, the

fiduciary shield doctrine  has come under increasing criticism and been rejected by the circuit courts

that have addressed it.[3]  see also 3A WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF

THE LAW OF CORPORATIONS § 1296.20 (updated September 2019). Thus, there is a broad consensus

---

[3]*See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 10–12 (1st Cir. 1990) (resting personal jurisdiction on the defendant's actions taken '[a]s the corporate officer'); *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 21–24 (2d Cir. 1988) (grounding the exercise of personal jurisdiction over individual defendants in part on actions made in a corporate capacity); *FlagHouse, Inc. v. ProSource Dev., Inc.*, 528 F. App'x 186, 189 & n.4 (3d Cir. 2013) (noting there is no basis for the fiduciary shield doctrine under the Due Process Clause 'because the Supreme Court has held that it does not violate due process to find personal jurisdiction based solely on contacts made in an employee's official capacity'); *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 177 (4th Cir. 2002) (relying on *Calder* to hold that an individual defendant 'is not immune from jurisdiction in Virginia merely because her contacts with the Commonwealth were made ostensibly on behalf of' her employer); *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (holding "that the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdictional over those defendant"); *Hardin Roller Corp. v. Universal Printing Mach., Inc.*, 236 F.3d 839, 842 (7th Cir. 2001) ("[T]he Constitution does not shield persons who act as corporate agents from individual-capacity suits"); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 521–522 (9th Cir. 1989) (holding that *Calder* and *Keeton* preclude any application of the fiduciary shield doctrine under due process); *Newsome v. Gallacher*, 722 F.3d 1257, 1275–1276 (10th Cir. 2013) ( stating that tThe fiduciary shield doctrine . . . has no necessary connection to the minimum contacts analysis.");*Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 391–392 (11th Cir. 1988) (rejecting the concept of a fiduciary shield doctrine in light of Calder).

among federal courts that due process does not require the application of the fiduciary shield doctrine.

Regardless, even if the argument survived *Calder* and *Keeton*, which is doubtful, Courts have recognized an exception to the fiduciary shield doctrine when the agent perpetrates a fraud or other tortious act. *See Wireless Toyz Franchise,* 255 Fed. App'x. at 794–95 (under Texas law, "the fiduciary-shield doctrine . . . does not prohibit [the defendant] from being held personally liable for his own tortious conduct simply because he is an officer of a corporation."); *Fairchild v. Barot*, 946 F. Supp.2d 573, 581 (N.D. Tex. 2013) (Lynn, J.)); *Duval Cty. Ranch Co. v. Wooldridge*, 674 S.W.2d 332, 337 (Tex. App. 1984, no writ); *Sedillo as trustee of Filo & Fran Sedillo Revocable Tr. v. Team Techs., Inc.*, 3:20-CV-1628-D, 2020 WL 6870711, at *4 (N.D. Tex. Nov. 23, 2020). Chase has asserted a breach of fiduciary duty and a fraud claim against Hodge. Dkt. No. 54 at 10.   Therefore the fiduciary shield doctrine is inapplicable. Further, the majority of the acts Chase pleads to support his claims against Chase took place up to and at the formation of Helping Hands, at which time Hodge could not possibly have been acting as an officer of the corporation,  For all of these reasons, the fiduciary shield doctrine does not bar the Court exercising jurisdiction over Ryan Hodge.

### b.   Specific Jurisdiction Over Ryan Hodge

Chase asserts that the Court has specific jurisdiction over Hodge because the alleged torts and frauds committed by Hodge occurred in Texas, Hodge made promises to Chase while Chase resided in Texas, Hodge acted as Chase's attorney in forming Helping Hands, Helping Hands was formed in Texas, and that Hodge cheated Chase out of his interests in a Texas business. Dkt. No. 64 at 11.  To satisfy specific jurisdiction, "due process requires: (1) minimum contacts by the defendant purposefully directed at the forum state; (2) nexus between the defendant's contacts and the

plaintiff's claims; and (3) that the exercise of jurisdiction over the defendant be fair and reasonable.*"*
*Seisa Med., Inc. v. Asia Capital Advisor, Ltd.*, 2018 WL 5020226, at \*5 (W.D. Tex. Sept. 20, 2018)
(quotations omitted); *see McFadin*, 587 F.3d at 759. "The minimum contacts inquiry is fact intensive
and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that
it reasonably anticipates being haled into court." *Id.* "To conclude that a defendant should
reasonably anticipate being haled into the forum State requires some act by which the defendant
purposefully avails itself of the privilege of conducting activities within the forum State, thus
invoking the benefits and protections of its laws[.]" *Panda Brandywine Corp. v. Potomac Elec.
Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

### (1)    Minimum Contacts Analysis

The "minimum contacts" prong is satisfied if: (1) the defendant purposefully availed itself
of the privileges of conducting activities in the forum state; and (2) the cause of action arises out of
or relates to those activities. *See Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012,
1018-19 (Fed. Cir. 2009). The non-resident's "purposeful availment" must be such that the
defendant "should reasonably anticipate being haled into court" in the forum state. *World–Wide
Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also Ruston Gas Turbines, Inc. v.
Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir.
2009). Even just a single act can satisfy minimum contacts if by the act the non-resident defendant
meets the "purposeful availment" standard. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475
(1985). A court may exercise specific jurisdiction over a defendant even if that defendant's contacts
with the forum are not sufficient to give rise to general jurisdiction if the plaintiff's claims "arise out

of" or are "related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Chase pleads that acting as his attorney, Hodge was supposed to form Helping Hands, LLC, as an equal partnership with profits shared equally by all partners, and instead formed it with Hodge as the only member.  Chase testified he was a resident of McKinney, Texas, from 2008 to 2015, which encompassed the time during when Helping Hands was formed, and when he did work on behalf of Helping Hands. Dkt. No. 16-1. In his deposition, Chase testified about his communications with Hodge during that time relating to the creation of Helping Hands:

> And we had various communications just about how we were going to get the business and how we were going to operate and how we were going to take distributions and how we were going to put all the profits back in to build it to be an entity where all three of our families would enjoy the -- the success of the company.

Dkt. No. 33-2 at 16.

This evidence demonstrates that Hodge reached out to Chase—a Texas resident—to pursue a business venture that would do business in Texas and be incorporated in Texas.  This is the type of activity that courts have held constitutes a person availing themselves of the benefits and protections of a forum's laws. *Hanson v. Denckla*, 357 U.S. 235, 253  (1958). Hodge's contacts with Texas were his own choice and were not "random, isolated, or fortuitous." *Keeton*, 465 U.S. 770, 774 (1984); *see also Walden v. Fiore*, 571 U.S. 277, 285  (2014) (purposeful availment shown by the defendant deliberately "reach[ing] out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there). Moreover, Chase's claims  arise out of and relate to Hodge's contacts with Texas, as his claims revolve around the circumstances of the creation and running of Helping Hands, a Texas limited liability company. *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1025 (2021). The Court finds

that Hodge's formation of Helping Hands in Texas, the parties' course of dealing regarding Helping Hands, Hodge's communicating with Chase and traveling to Texas, and his actions as the manager of Helping Hands are sufficient minimum contacts with Texas upon which to base jurisdiction. Hodge's contacts constitute purposeful availment sufficient for Hodge to have reasonably anticipated being hailed into Court in Texas related to Helping Hands, its formation, and the business relationship between Hodge and Chase regarding Helping Hands, all of which supports a finding of specific jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

Hodge correctly points out that Chase must establish specific jurisdiction for each of his claims. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "[S]pecific personal jurisdiction is a claim-specific inquiry," which means that when a plaintiff brings "multiple claims that arise out of different forum contacts of the defendant" the plaintiff "must establish specific jurisdiction for each claim." *Id.* (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006)). Specific jurisdiction exists when "a non-resident defendant "has 'purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). Given that all of Chase's claims arise out of Hodge's interactions with Chase related to Helping Hands, the findings just described are sufficient to support specific jurisdiction on all of Chase's claims.

### (2)    Fairness

Lastly, the Court must assess whether the exercise of jurisdiction over Hodge would offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Once a plaintiff establishes minimum contacts between the defendant and the forum

state, the burden of proof then shifts to the defendant to show that the assertion of jurisdiction is "unfair and unreasonable." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018) (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). "[I]t is incumbent on the defendant to present a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir.1992) (*citing Burger King Corp.*, 105 S.Ct. at 2184-85).

The factors considered when analyzing fairness are: "(1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies." *McFadin*, 587 F.3d at 760. Hodge has not met his burden to demonstrate that the Court exercising jurisdiction over him on Chase's claims would be unfair. Hodge was the manager of a Texas LLC, visited Texas several times related to that business and other businesses, including his law practice, and has other business contacts in Texas, including personally financing plaintiffs' personal injury cases in Texas, and entering into agreements with Texas lawyers to co-venture cases. Dkt. No. 64 at ¶ 19 (listing Hodge's numerous contacts with Texas). Additionally, as this case involves a Texas LLC, Texas has an interest in the outcome of this litigation, including a policy interest as its corporate form was allegedly used to perpetrate fraud. Moreover, because Helping Hands does not dispute jurisdiction, the efficient administration of justice favors a finding of fairness. The Court finds it has specific personal jurisdiction over Ryan Hodge.[4]

---

[4]Because the Court has found there is specific jurisdiction over Hodge, it need not address the issue of general jurisdiction. *See Werner Air Freight, LLC v. Morsey*, 2016 WL 4191234, at *3 (N.D. Miss. Aug. 5, 2016).

### 2.      Failure to State a Claim

Both Hodge and Helping Hands move to dismiss the claims against them under Rule 12(b)(6).  As noted at the outset, Chase makes claims against both Ryan Hodge and Helping Hands, some of which overlap, and some of which do not.  The Court will address first all of the claims that name Hodge: (1) breach of fiduciary duty; (2) breach of contract; (3) violations of the Texas Securities Act; (4) common law and statutory fraud; (5) a request for declaratory judgment of Chase's rights in Helping Hands, and (6) appointment of a receiver.  Chase also brings the Securities Act, statutory fraud, judgment and receivership claims against Helping Hands, so the Court will take up Helping Hand's arguments on those claims while addressing Hodge's arguments as well.

### a.      Breach of Fiduciary Duty

Chase asserts a variety of acts by which Hodge allegedly breached his fiduciary duty:

a)      On information and belief, Defendant Ryan Hodge usurped business opportunities from Helping Hands Capital, LLC, funneling them to himself, his wife, or companies or partners with which they were affiliated. Defendant Ryan Hodge entered into partnerships personally and/or through his law firm with clients and contacts of Plaintiff rather than sharing those opportunities with the partnership.

b)      Defendant Ryan Hodge engaged in self-dealing when, unbeknownst to Plaintiff, he named himself the 100% owner of Helping Hands and deliberately omitted Plaintiff from Helping Hands' corporate documents.

c)      Defendant Ryan Hodge engaged in self-dealing when he transferred ownership of Helping Hands to a Nevada Trust in an unabashed attempt to move Plaintiff's ownership interest in the partnership out of his reach.

d)      Defendant Ryan Hodge engaged in self-dealing by causing the Helping Hands business to pay exorbitant fees to his law firm, thereby reducing the expenses of the law firm without providing reasonable value to Helping Hands.

e)      Unbeknownst to Plaintiff, Defendant Ryan Hodge transferred proceeds from an SBA loan to a Nevada entity controlled by Plaintiff and then back to Helping Hands to disguise the use of the funds from the SBA.

14

f)      Defendant Ryan Hodge deliberately refused to provide Plaintiff information about the business and deliberately stopped making distributions of cash to Plaintiff, but continued to pay himself.

g)      Defendant Ryan Hodge took financial assets of the business and transferred them to Fund V without the knowledge or approval of Plaintiff, negotiating a deal more favorable to Defendants than to Plaintiff.

h)      Defendant Ryan Hodge usurped business opportunities of Helping Hands by creating an entity called Fidelity Finance and arranging credit facilities for that company rather than Helping Hands directly.

i)      On information and belief, Defendant Ryan Hodge has transferred cash from the Helping Hands accounts to a Trust or Trusts in Nevada, either directly or through an intermediary company.

j)      Defendant Ryan Hodge has manipulated the books of Helping Hands to take profits out of the business as "expenses," thereby decreasing the amounts owed to Plaintiff under the terms of the parties' joint venture or partnership agreement.

Dkt. No. 54 at ¶ 24(a)-(j).

Hodge argues that of the ten grounds, six—(a), (d), (g), (h), (i), and (j)—describe harm done to Helping Hands and not Chase individually. Hodge argues that these six claims must be dismissed because under Texas law, a shareholder may not sue directly for breaches of duties by officers and directors of a company, as those injuries are suffered by the corporation and thus a suit to recover those damages may only be brought as a derivative suit on behalf of the corporation. *See, e.g.*, *7547 Corp. v. Parker & Parsley Dev. Partners*, 38 F.3d 211, 221 (5th Cir. 1994) (concluding, "[t]he cases are legion that a shareholder may not sue directly for breaches of duties by officers and directors of a company because those injuries are actually suffered by the corporation."); *Schoen v. Underwood*, 2012 WL 13029591, at *12 (W.D. Tex. May 15, 2012) ("A member of an LLC cannot recover damages for injuries suffered by the company, even though she may have been indirectly injured by

the decrease in value of her membership interest. To sue on the LLC's behalf, the member must

bring a derivative suit.").

In any suit in federal court, the issue of standing presents a "threshold jurisdictional

question." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The requirement that a

party have standing to sue flows from Article III of the Constitution, which limits the scope of the

federal judicial power to the adjudication of "cases" or "controversies." U.S. CONST. ART. III, § 2.

Standing consists of three elements: (1) the plaintiff must have suffered an "injury-in-fact," which

is an invasion of a legally protected interest that is "concrete and particularized" and "actual or

imminent"; (2) the injury must be "fairly traceable" to the challenged conduct of the defendant; and

(3) it must be likely that plaintiff's injury will be redressed by a favorable judicial decision. *Lujan*

*v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). As with the determination of whether the Court has

diversity jurisdiction, the Court must, when necessary, raise the issue of plaintiff's Article III

standing *sua sponte. Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331-32 (5th

Cir. 2002).

According to the allegations in the First Amended Complaint, Chase is not an owner or

member of Helping Hands, LLC. Dkt. No. 54 at 2 (stating, "Hodge then formed Helping Hands

Capital, LLC, as a Texas limited liability company on March 28, 2013. Hodge was listed on the

Certificate of Formation as the Managing Member of Helping Hands . . . the initial Company

Agreement listed Hodge as 100% owner of the 10,000 member units."). Indeed, the essence of

Chase's complaint is that he was never made a member of the LLC although he was promised an

ownership interest.  Thus he asks that the Court declare he was in fact a partner in Helping Hands

and entitled to all profits, payments, and rights attendant to that partnership. However, as the First

Amended Complaint states, Chase is not a named member of Helping Hands and any interest he may have in it is outside its status as an LLC. As a result, though Chase may have other claims through which he can seek to recover against Hodge for these actions, he has no standing to sue Hodge for Hodge allegedly breaching his fiduciary duty to Helping Hands.

And even if he were a member of the LLC, Chase would still not have standing to bring these claims. A claim of harm to a corporate entity must be brought, directly or derivatively, by the entity suffering the harm. *See Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990); *Eye Site, Inc. v. Blackburn*, 796 S.W.2d 160, 161 (Tex. 1990) (stating if a wrong has been done to the corporation, it is the corporation which must be compensated for the wrong, and even if also wronged an individual may not recover personally – no direct individual action is possible). The harms alleged in (a), (d), (g), (h), (i), and (j) above were suffered by Helping Hands and not Chase, and must be brought in a derivative action, if at all.

Similarly, the Court finds that Chase has failed to adequately plead an injury to either Helping Hands or himself for the alleged acts detailed in (c) and (e) above (transferring ownership of Helping Hands to a Nevada Trust, and transferring proceeds from an SBA loan to a Nevada entity "controlled by Plaintiff" and then back to Helping Hands). Dkt. No. 54 at ¶ 25 (c) and (e). The Court finds that Chase does not have standing to bring these breach of fiduciary claims because he has failed to assert the requisite injury to himself necessary to support these claims.

With regard to the claim that Hodge refused to provide Chase with information about the business and stopped paying him (set out in (f) above), Hodge argues that as the managing member of Helping Hands, he does not owe Chase a fiduciary duty and this claim should sound in contract rather than tort. The Court agrees. *See Gill v. Grewal*, 2020 WL 3171360, at *20 (S.D. Tex. June 15,

2020) (stating that in Texas, members in a limited liability company do not owe a formal fiduciary duty to one another) (citing *Guevara v. Lackner*, 447 S.W.3d 566, 580 (Tex. App.—Corpus Christi 2014, no pet.)); *Higher Perpetual Energy, LLC v. Higher Power Energy, LLC,* 2018 WL 3020328, at *9 (E.D. Tex. June 18, 2018) (holding that under Texas law, a formal fiduciary relationship does not exist between managers and members of an LLC).

Thus, the only remaining breach of fiduciary duty claim relates to Chase's allegation that Hodge breached a fiduciary duty to him when Hodge omitted Chase's name from the corporate formation documents of Helping Hands, LLC. Chase pled that "unbeknownst to Plaintiff he named himself the 100% owner of Helping Hands and deliberately omitted Plaintiff from Helping Hands' corporate documents." Dkt. No. 54 at ¶ 24(b). This claim can only be against Hodge in his alleged capacity as Chase's attorney, as Helping Hands did not exist at the time this occurred, and Hodge was not yet the managing member of Helping Hands. Chase pleads that Hodge "served as Plaintiff's attorney in Texas  in connection with the formation and launch of the business that became Helping Hands." Dkt. No. 54 at ¶ 21(a).

Hodge seeks dismissal of this claim by arguing that Chase cannot bring this claim because it conflicts with the allegations in the Original Petition, where Chase alleged:

> Hodge, as attorney for Chase and Guedri, suggested that he form and own the entity; however, he stated the three would treat the company as a partnership in which each owned one third of the company. The three agreed that all profits from the company would be distributed on this basis.

Dkt. No. 1-1 at 6.  Chase swore under oath that this was a true and correct factual statement. *Id.* at 23.  "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). "Normally, factual assertions in pleadings and pretrial orders are considered to

be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983); *see also Zamorano v. Zyna LLC*, 2020 WL 2316061, at *4 n.8 (W.D. Tex. May 11, 2020). But inconsistent pleadings do not constitute unequivocal judicial admissions. *True Believers Ink 2, Corp. v. Russell Brands, LLC.*, 2019 WL 4039888, at *2 (E.D. Tex. Aug. 27, 2019). And "when a party has amended an earlier pleading, allegations and statements in earlier pleadings are not considered judicial admissions." *Devore v. Lyons*, No. 2016 WL 6277810, at *5 (N.D. Tex. Oct. 25, 2016). Although the allegation in the original complaint that Chase knew he was omitted from the formation documents is troubling, and casts significant doubt on the veracity of the current allegation, it does not mandate the dismissal of the current allegation.

### b. Securities Fraud Claims

Chase also brings a claim that Ryan Hodge and Helping Hands violated the Texas Securities Act, when Hodge promised Chase that he would: (a) provide ample capital for Helping Hands to operate; (b) use Chase's contacts—both lawyers seeking loans and investors providing capital—to fund litigation loans through Helping Hands; (c) engage in the business of providing litigation financing through Helping Hands; and (d) split the profits from the business with Chase. Dkt. No. 54 at ¶ 35. Chase alleges that but for these promises he would not have agreed to form Helping Hands or do business with Hodge. *Id.* at at ¶ 36.

Article 581-33(A)(2) of the Texas Securities Act provides that any person "who offers or sells a security by means of an untrue statement of material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, is liable to the person selling the security to him." Chase alleges his "ownership interests" in Helping Hands qualify as "securities" under the statute. Chase alleges that

19

Helping Hands was the "seller" of the securities and that Hodge was the "aider and abettor." This theory is not actionable under the statute, however, as an actual sale has to have taken place before a buyer has a claim under the statute. Although the statute uses the language "attempt to sell" and "offer to sell" in its definition section, "it is clear that article 581-33A(2) contemplates that the sale must have been effected because the buyer may sue either at law or in equity for rescission, or for damages." *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 603-04 (S.D. Tex. 2003). Chase's pleadings state that he was not actually sold any securities as Hodge retained a 100% interest in Helping Hands. Helping Hands was therefore not a "seller" of "securities" and Chase has failed to allege that he purchased a security from Helping Hands or Hodge. Because Helping Hands in not a "seller" the "aider and abettor" provision of the statute is inapplicable to Hodge. TEX. REV. CIV. STAT. ANN., Art. 581-33(F)(2). This claim fails.

     **c.**     **Statutory Fraud**

Chase alleges that Ryan Hodge and Helping Hands committed statutory fraud in violation of Chapter 27 of the Texas Business and Commerce Code on the same factual basis as the securities fraud claim just discussed. *See* Dkt. No. 54 at ¶ 35. He asserts these actions were made in a stock transaction, and therefore Hodge and Helping Hands' actions violated the statute. However, § 27.01 pertains only to "misrepresentations of material fact made to induce another to enter into a contract for the sale of land or stock." *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App.—Waco, 2000 pet. denied). As just noted, Chase does not allege that Helping Hands stock was sold. For § 27.01 to apply, there must be an actual conveyance of stock, not merely a breach of contract to convey stock. *U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 406 (5th Cir. 2000). "This narrow reading of Section 27.01(a) is consistent with the Supreme Court of Texas' interpretation that

the statute is penal in nature and thus must be strictly construed." *Id.* The statute is inapplicable and Chase's statutory fraud claim fails.

### d.      Chase's Fraud Claim

Chase also brings a common law fraud claim.  Hodge and Helping Hands argue that this claim fails to meet the heightening pleading requirements of Rule 9(b). State law fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Dorsey,* 540 F.3d at 339. These requirements are to be imposed "strictly," requiring a plaintiff to "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.*  In sum, the plaintiff must specifically plead the "who, where, and when" of these statements. *See Afshani v. Spirit Realty Capital, Inc.*, 2021 WL 228907, at *3 (N.D. Tex. Jan. 22, 2021).

Defendants assert that Chase has failed to allege with sufficient particularity the where and when of the promises Hodge allegedly made to him, especially in light of the fact that Chase testified in his deposition  that he was away from Texas "90 percent" of the time, during this period. Dkt. No. 33-2 at 7, 60-61. He pleads merely that "[t]he above promises were made to Chase by Ryan Hodge while Chase was living in Texas during the planning and formation of Helping Hands Capital, LLC." Dkt. No. 54 at ¶ 41. Chase testified that Hodge called him "by telephone and sent him countless emails while he was within the state of Texas to discuss Helping Hands." Dkt. Nos. 33-2 at 7, 53-56; Dkt. No. 33-1.  Chase has not quoted the content of the emails, nor cited their dates, and has not identified the actual substance of his conversations with Hodge.  Other courts have recognized  that pleading that fraudulent statements were made at some general time and failing to plead where they were made is insufficient to meet the pleading standard of Rule 9.  *See Rocky Mtn. Choppers, LLC*

*v. Textron Fin. Corp.*, 2012 WL 6004177 at *6 (N.D. Tex. Dec. 3, 2012); *7-Eleven Inc. v. Puerto Rico-7 Inc.*, 2008 WL 4951502 at *5 (N.D. Tex. Nov. 19, 2008).

The only conversation that Chase recounts in his amended complaint in detail occurred five years after the formation of Helping Hands, and occurred in Washington DC, where Chase alleges Hodge stated they were "50/50" partners in Helping Hands. One of the elements of fraud is demonstrating an injury caused by reliance on the allegedly false statement. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Chase's pleadings fail to state how he relied on this comment to his financial detriment. Rather, all of Chase's allegations regarding reliance relate to the conversations with Hodge leading to forming Helping Hands, and not to this conversation. Dkt. No. 54 at ¶¶ 36, 42. While it may have some evidentiary value with regard to Chase's fraud claim based on Hodge's alleged statements prior to the formation of Helping Hands—statements that Chase has *not* pled with sufficient particularity—this statement by itself does not state a fraud claim.

Moreover, Defendants argue that Chase has failed to identify the falsity in the alleged promises he contends induced him to enter into the business. Chase asserts that Hodge promised he would: (a) provide ample capital for Helping Hands to operate; (b) use Chase's contacts—both lawyers seeking loans and investors providing capital—to fund litigation loans through Helping Hands; (c) engage in the business of providing litigation financing through Helping Hands; and (d) split the profits from the litigation funding business with Chase. Defendants point out that Chase pleads that Helping Hands actively made loans to litigants and that distributions were made to him on a one-third and then one-half basis in the years following the formation of Helping Hands. It was

22

only years later that Chase alleges Helping Hands stopped making an equal split of profits. This too undermines Chase's fraud claim.

For all of these reasons, Chase has failed to plead a fraud claim that meets the heightened pleading standards of Rule 9(b).

### e.    Declaratory Judgment

Chase seeks a declaratory judgment of his ongoing rights in Helping Hands. Defendants move to dismiss the request for declaratory relief, arguing that resolution of Chase's other claims will address the requested declaratory relief and it is redundant. Rule 12(b)(6) does not contemplate motions to dismiss specific types of relief; rather it addresses claims. The Court generally sees no harm in allowing alternative relief to proceed beyond a motion to dismiss. Declaratory relief is discretionary relief. It is not clear that resolution of Chase's claims will make the declaratory relief requested moot. Accordingly, dismissal of the declaratory judgment claim is not warranted at this time.

### f.    Receivership

In the Amended Complaint Chase asks the Court to appoint a temporary receiver to take over control of Helping Hands, and order Hodge and Helping Hands to turn over all books and records, as well as an accounting to the receiver. Defendants move to dismiss asserting that when Hodge formed Helping Hands he owned a 100% interest, which he later transferred to a trust, CFC Trust II, in 2016. Because the pleadings reflect that Chase never had a formal ownership interest in Helping Hands, Defendants argue he lacks the required ownership interest needed to request the appointment of a receiver. Texas law "provides the court may appoint a receiver in an action between parties jointly interested in any property." *Hawkins v. Twin Montana, Inc.*, 810 S.W.2d 441, 444

(Tex. App.–Fort Worth 1991, no writ) (relying on TEX. CIV. PRAC. & REM. CODE ANN. § 64.001(a)(3)). Thus, before appointing a receiver under subsection (a)(3), the court must find that the party seeking appointment has "a probable interest in or right to the property or fund, and the property or fund must be in danger of being lost, removed, or materially injured." *Id.* at § 64.001(b). Further, "[r]eceivership is an extraordinarily harsh remedy and one that courts are particularly loathe to utilize." *Spiritas v. Davidoff*, 459 S.W.3d 224, 232 (Tex. App.—Dallas 2015, no pet.). Even if a specific statutory provision authorizes a receivership, a trial court should not appoint a receiver if another remedy exists, either legal or equitable. *Benefield v. State*, 266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.). "Rather, receivership is warranted only if the evidence shows a threat of serious injury to the applicant." *Id.*

As stated above with regard to declaratory relief, Rule 12(b)(6) applies to claims and not remedies. Thus, dismissal of the request for the appointment of a receiver is unwarranted at this time. Whether a receivership should be created is an issue that the Court can address at a future time, if needed.

## B.  Helping Hands' 12(b)(6) Motion to Dismiss

Helping Hands argues that Chase has failed to state a claim for relief on his various bases for relief. The Court addressed all but one of Helping Hands' arguments above, with the only remaining claim Chase brings against Helping Hands that has not been discussed being knowing participation in breach of fiduciary duty.

Chase asserts various bases for his claim that Ryan Hodge breached his fiduciary duty to him, and with vague language alleges that Helping Hands (and Stephanie Hodge) knowingly participated in these breaches of fiduciary duty. Specifically, Chase alleges:

> Defendants Stephanie Hodges [sic] and Helping Hands Capital, LLC, were both aware that Defendant Ryan Hodge owed Plaintiff a fiduciary duty. Both were aware of his breaches of duty described above and knowingly participated in some or all of them.

Dkt. No. 54 at ¶ 27. To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (quoting *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721–22 (Tex. App.—Austin 2001, pet. denied)).  The Amended Complaint fails to allege facts sufficient to support an inference that Helping Hands or Stephanie Hodge participated in any breach of a fiduciary duty Hodge owed to Chase.

Chase conflates his claims against Helping Hands and Hodge, complaining that Hodge usurped Helping Hands and improperly controlled it to Chase's detriment. But as Ryan Hodge points out, Chase has identified two separate alleged fiduciary duties he claims Hodge owed:  (1) a duty as Chase's alleged attorney; and (2) a duty as a fiduciary of Helping Hands, a duty that is owed to its shareholders, as discussed above.  As already discussed above, the only basis for a breach of fiduciary duty that survives dismissal is the former, Hodge's duty to Chase in the formation of Helping Hands, when Hodge was allegedly acting as Chase's attorney.  It is logically impossible for Helping Hands to have participated in that alleged breach, since it did not exist at that time.  The "knowing participation" fraud claim against Helping Hands should therefore be dismissed for failure to state a claim on which relief may be granted.[5]

---

[5] Chase also does not plead any facts explaining how Stephanie Hodge could have been involved in Ryan Hodge's alleged breach of a duty Hodge owed to Chase as an attorney, but

C.      **Motion for Leave to Amend**

Alternatively, Chase states that "[i]n the event that the Court concludes that the Complaint is insufficient, Plaintiff requests that he may be given an opportunity to amend the Complaint to cure any defects." Dkt. No. 54 at 18. Defendants object to any amendment, arguing that Chase has already amended once, the deadline to amend pleadings has expired, and Chase has made no effort to show how he could cure the defects in his Amended Complaint. Dkt. No. 67 at 10.

Generally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving plaintiff "at least one chance to amend." *Hernandez v. Ikon Ofc. Solutions, Inc.*, 306 Fed. Appx. 180, 182 (5th Cir. 2009). "Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 177 (5th Cir. 2016) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)). The Fifth Circuit has previously stated that "[a] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion [within] the contemplation of Rule 15(a)." *Id.* (quoting *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).

Chase has not identified any specific facts he would plead that justify permitting him leave to amend once again. Should Chase believe he can cure the defects found in this Report through an amendment to his complaint, he is free to file a motion seeking leave and stating in detail how any amendment would cure the defects and not be futile.

---

Stephanie Hodge has not filed a motion to dismiss. As this is the sole claim brought against her, the district judge may wish to raise this issue *sua sponte* when considering this Report and Recommendation.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant Helping Hand Capital, LLC's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 56) and **DISMISS** all of Chase's claims against Helping Hands, LLC except the claims seeking a declaratory judgment and the appointment of a receiver.

The undersigned **FURTHER RECOMMENDS** that the Court **GRANT IN PART** and **DENY IN PART** Defendant Ryan E. Hodge's Rule 12(b) Motion to Dismiss (Dkt. No. 60). Specifically, it is recommended that the Court **DENY** the motion pursuant to Rule 12(b)(2) for lack of jurisdiction, and **GRANT** the motion to dismiss pursuant to Rule 12(b)(6) and **DISMISS** all of Chase's claims against Ryan E. Hodge except: (1) the claim for breach of fiduciary duty arising out of an alleged attorney-client relationship during the formation of Helping Hands; (2) the breach of contract claim; (3) the request for a declaratory judgment; and (4) the request for the appointment of a receiver.

Finally, the Court **RECOMMENDS** that should Chase believe he can cure the defects noted herein in the claims the undersigned recommends be dismissed, he be required to seek leave of court to file an amended pleading, setting forth with specificity how he can cure the defects, and that the Court set a deadline for the filing any motion seeking such leave.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file

written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 14th day of May, 2021.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE