UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **DEAN CHASE,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. 1:20-CV-00175-DH** |
| | § | |
| **RYAN E. HODGE, HELPING** | § | |
| **HANDS CAPITAL, LLC, A TEXAS** | § | |
| **LIMITED LIABILITY COMPANY;** | § | |
| *Defendants* | § | |

## MEMORANDUM ORDER AND OPINION AND FINAL JUDGMENT

Before the Court is Defendants' Motion for Summary Judgment, Dkt. 97, Plaintiff's Response, Dkt. 98, and Defendants' Reply, Dkt. 106, along with all related briefing and exhibits. For the reasons stated below, the Court finds Defendants' Motion should be **GRANTED**.

## I.       BACKGROUND

This case involves a dispute about the ownership of Texas limited liability company Helping Hands Capital, LLC. Helping Hands provides non-recourse living expenses for parties involved in personal injury claims and suits. Helping Hands was formed in 2013, by Ryan Hodge, an attorney licensed in and residing in Kansas, who formed the business as its sole member. Dean Chase, a Florida citizen, asserts an ownership claim in Helping Hands, based upon an alleged agreement among Hodge, Chase, and another individual, Mark Guedri, to partner in a litigation funding business, which was ultimately organized as Helping Hands. Chase filed the suit in

Travis County on February 11, 2020, Dkt. 1-1, which Defendants removed to federal court on the basis of diversity on February 17, 2020. Dkt. 1-4.

After removal, Magistrate Judge Andrew W. Austin submitted a Report and Recommendation to the district court. Dkt. 72. The district court adopted the Report and Recommendation and dismissed the majority of Chase's claims. Accordingly, Chase's remaining claims against Hodge are: (1) breach of fiduciary duty arising from the formation of Helping Hands Capital, LLC, Dkt. 72, at 18; and (2) breach of contract. The district court also did not dismiss the requested remedies against all Defendants for: (1) declaratory relief and (2) the appointment of a receiver.

Defendants now move for summary judgment asserting: (1) Chase's claims are barred by the applicable statute of limitations; (2) Chase's claims are barred by the Statute of Frauds: (3) Chase's claims fail for indefiniteness; and (4) appointment of a receiver is not available to Chase under Texas law as he is not a partner or joint owner of Helping Hands Capital, LLC.

## II.    FACTUAL BACKGROUND

The following facts are taken from Chase's First Amended Complaint, Dkt. 54. Chase asserts that in 2013, Ryan Hodge, Chase, and Mark Guedri, decided to start a business to provide loans to litigants, which would be secured by the future proceeds of any lawsuit settlement. At the time, the three were partners in a separate business, HMR, that provided case expense loans. Chase maintains that Hodge, acting as an attorney for Chase and Guedri, formed the new entity, and that the parties agreed to treat it as an equal partnership in which each owned one third of the company, and

would share profits in thirds as well. On March 28, 2013, Hodge formed Helping Hands Capital, LLC, as a Texas limited liability company, listing himself on the Certificate of Formation as the Managing Member, but making no mention of Chase or Guedri in the filing.

From 2013 through 2016 the Company typically reinvested profits into the Company; however, when funds were occasionally distributed to the three partners, it was always on the same one-third basis as initially agreed upon. In 2016, Guedri tendered his interest back to the Company. Chase asserts Hodge acknowledged to Chase in writing that going forward they were "50/50 partners." In 2016 and 2017, distributions to Hodge and Chase were allegedly made on a 50/50 basis. Chase alleges that up to 2017, Hodge was always forthcoming with financial information on the Company, and Chase and Hodge worked together to further the interests of the Company. In early 2018, Chase began pressing Hodge for financial information on the Company. On April 26, 2018, Hodge sent a communication to Chase advising that Chase's interest in the Company was an "economic benefit only" and not "legal ownership." Chase alleges that Hodge instructed Chase to cease telling third parties that he was an owner of the Company, despite Hodge having mentioned to third parties on countless occasions that Chase was his "partner" and an "owner of Helping Hands."

Chase contends that Hodge asserted for the first time in 2018 that the Company was "owned 100% by a trust" and that Hodge had no ownership in Helping Hands himself. It was during this timeframe that Chase alleges Hodge began

3

excluding Chase from the business. On May 13, 2018, Hodge and Chase met in Washington, DC to try to resolve their issues regarding Helping Hands. Chase alleges that during this meeting Hodge again assured Chase that each were "50/50 partners" in Helping Hands and each would continue to work to realize solid growth and an exit strategy for the Company. Following the meeting, Chase requested he be provided with all information and documents pertaining to Helping Hands since its inception and requested "complete and unlimited access" to Helping Hands' books and records on a going forward basis. Chase requested that this information be provided on or before June 1, 2018. Hodge, however, never provided the information.

On January 11, 2019, Hodge forwarded "preliminary financials" to Chase, and Chase requested further documentation be provided to a forensic accountant. Hodge refused. Throughout 2019, Chase tried to resolve the issues with Hodge. Then, on September 26, 2019, Hodge emailed Chase and offered to buy Chase's "interests" in Helping Hands for $25,000, or otherwise he would "transfer" his money out of Helping Hands and sell the assets and wind down the Company. Chase argues this offer was patently disingenuous because the company has made and received millions of dollars in loans over the past two years.

## III.     LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986);

*Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element

essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## IV.     ANALYSIS

### A.     Limitations

Defendants assert that limitations bar all of Chase's claims. The parties agree that Texas' four-year statute of limitations applies to Chase's claims for breach of contract and breach of fiduciary duty. *See, e.g.*, Tex. Civ. Prac. & Rem. Code §§ 16.004(a)(5) (breach of fiduciary duty), 16.051 (residual limitations period, applicable to breach-of-contract claims); *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 707 (Tex. 2021). The parties agree that the same four-year statute of limitations also applies to the remedies of declaratory judgment and receivership. *See, e.g.*, *Ammerman v. Ranches of Clear Creek Cmty. Ass'n*, 562 S.W.3d 622, 636 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Petro Harvester Operating Co., L.L.C. v. Keith*, 954 F.3d 686, 699 (5th Cir. 2020); Dkt. 98, at 8 (Plaintiff's brief states "Plaintiff agrees with Defendants that Texas law governs the limitations issue in this case and that the four-year statute applies.")

### 1.     Accrual of Chase's claim

Defendants assert that Chase's claims accrued on March 28, 2013, when Hodge formed Helping Hands Capital, LLC, and executed the Limited Liability Company Operating Agreement for Helping Hands Capital, LLC. Dkt. 97, at 14; Dkt. 97-5, Certificate of Formation; Dkt. 97-6, Operating Agreement. Chase argues that his claim accrued in 2018 "when Ryan Hodge first asserted that Plaintiff was not an owner of Helping Hands, LLC." Dkt. 98, at 8. Chase contends that "he had no idea

6

that Hodge had breached the parties' agreement until Hodge admitted it in the Spring of 2018." Dkt. 98, at 12.

In support of their contention that the formation of Helping Hands is the relevant legal injury in this case, Defendants rely on statements in Chase's First Amended Complaint, the live pleading in this case, which he verified. Dkt. 54. In it, Chase states:

> 7. In 2013, Plaintiff Dean Chase ("Chase"), Defendant Hodge, and Mark Guedri ("Guedri") decided to start a business to provide loans to litigants with said loans being secured by the future proceeds of any lawsuit settlement. At the time, the three gentlemen were partners in a separate business, known as HMR, that provided case expense loans, and each saw the need for this additional service.
>
> 8. Hodge, as attorney for Chase and Guedri, was to form an entity. The parties agreed to treat the company as an equal partnership in which each owned one third of the company. The three agreed that all profits from the company would be distributed on this basis.
>
> 9. Hodge then formed Helping Hands Capital, LLC, as a Texas limited liability company on March 28, 2013. Hodge was listed on the Certificate of Formation as the Managing Member of Helping Hands, but he omitted Chase and Guedri from the filing.
>
> 10. The initial Company Agreement listed Hodge as 100% owner of the 10,000 member units of the Company issued and outstanding as of March 28, 2013. Despite Plaintiff trusting his friend, partner, and attorney to follow through with the parties' agreement, Hodge did not include Plaintiff or Guedri on the Company Agreement.
>
> ***
>
> 21. Defendant Ryan Hodge also owed Plaintiff a fiduciary duty because:
>
> a) He served as Plaintiff's attorney in Texas in connection with the formation and launch of the business that became Helping Hands;
>
> b) He served as Plaintiff's attorney for business and personal matters in Texas before the formation of Helping Hands;

c) He entered into a de facto partnership with Plaintiff to carry out a litigation funding business in Texas …

\*\*\*

24. Defendant Ryan Hodge breached his fiduciary duty to Plaintiff in the following respects:

\*\*\*

b) Defendant Ryan Hodge engaged in self-dealing when, unbeknownst to Plaintiff, he named himself the 100% owner of Helping Hands and deliberately omitted Plaintiff from Helping Hands' corporate documents.

*Id.*, at 2, 5, 6.

Defendants cite Texas law holding that a cause of action accrues when the allegedly wrongful act effects an injury, regardless of when the plaintiff learns of the injury. Dkt. 97, at 15 (citing *Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 609 (Tex. 2017); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). The date a cause of action accrues is a question of law. *See, e.g.*, *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001).

Chase responds that Defendants misinterpret the general rule as to when a cause of action accrues. Dkt. 98, at 8. Chase argues, without citing any case law, that in Texas, "claims accrue when a wrongful act has taken place and an injury has been caused. Both the act and the injury must have occurred for the claim to accrue." Dkt. 98, at 8. Chase asserts that the wrongful act occurred 2013, but the injury "did not occur until he was deprived of the profits and the benefits of the business in 2018 and 2019." *Id.*

Defendants reply that Chase is confusing the concept of accrual and "legal injury" and the discovery rule. The undersigned agrees. Under Texas law, a cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorize a party to seek a judicial remedy. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur. *Id.* (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).

The legal injury in this case, "the wrongful act"—the alleged breaches of fiduciary duty[1] and contract, as identified by Chase in his First Amended Complaint and agreed to in his Response—is when Hodge "named himself the 100% owner of Helping Hands and deliberately omitted Plaintiff from Helping Hands' corporate documents." Dkt. 54, at 6. This occurred on March 28, 2013, and as a matter of law, the undersigned finds this is when Chase's cause of action accrued. Accordingly, unless Chase can make out an exception to the legal injury rule, his breach of contract and breach of fiduciary duty claims are time-barred.

2.    The discovery rule

Chase argues the discovery rule tolls the statute of limitations in this case. Dkt. 98, at 10. Defendants argue that Chase may not rely on the discovery rule to

---

[1] For breach of fiduciary duty and breach of contract claims, an injury occurs at the moment of breach. *Leigh v. Weiner*, 679 S.W.2d 46, 48-49 (Tex. App.—Houston [14th Dist.] 1984, no writ) (breach of fiduciary duty); *Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex. 2006) (breach of contract).

delay accrual of his claims because: (1) the nature of the injury incurred was not inherently undiscoverable; and (2) Chase failed to properly plead the discovery rule, as required by the Fifth Circuit. Dkt. 97, at 19.

Chase maintains that the relevant injury did not occur in 2013 when Helping Hands, LLC, was formed, but when Hodge asserted Chase was not an owner, and he was deprived of the profits and benefits of the business which occurred in 2018 and 2019. Dkt. 98-1, Chase Declaration. Chase argues that until that time, he was included in the business, he continued to receive payments, that Hodge fraudulently concealed his wrongdoing, and that he "had no idea" he was not a partner in Helping Hands until Hodge notified him in 2018. Dkt. 98, at 9-10. Chase further asserts that the injury in this case was inherently undiscoverable because Hodge fraudulently concealed his wrongdoing, and that that he put the discovery rule into issue in paragraphs 13-15 of his First Amended Complaint. Dkt. 98, at 10.

The discovery rule is a "narrow exception" to the legal injury rule that "defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). It "applies when the injury is by its nature inherently undiscoverable." *Childs v. Haussecker*, 974 S.W.2d 31, 36-37 (Tex. 1998). "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V.*, 933 S.W.2d at 25. "The determination of whether an injury is inherently undiscoverable is made on a categorical basis rather than on the facts of the

individual case." *Archer v. Tregellas*, 566 S.W.3d 281, 290 (Tex. 2018) (citing *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)).

The question is whether the injury is "the type of injury that could be discovered through the exercise of reasonable diligence." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011) (citing *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734-35 (Tex. 2001)). Further, "knowledge of facts that could cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action is in the law equivalent to knowledge of the cause of action for limitation purposes." *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 436 (Tex. App.—Fort Worth 1997, pet. denied) (internal quotations omitted).

Defendants first argue that Chase did not plead the discovery rule. The discovery rule must be affirmatively pleaded in federal court, whether specifically or through "sufficient facts to put the defense on notice of the theories on which the complaint is based." *Colonial Penn Ins. Co. v. Mkt. Planners Ins. Agency, Inc.*, 1 F.3d 374, 376 (5th Cir. 1993). Chase concedes that he "has not yet specifically pled the discovery rule," but he asserts he put it "plainly in issue in his First Amended Complaint. Dkt. 98, at 10. He cites the following paragraphs in support:

> 13. In 2016, Guedri tendered his interest back to the Company and Hodge acknowledged to Chase in writing that going forward they were "50/50 partners." During the timeframe of 2016 and 2017, distributions to Hodge and Chase were allegedly made on a 50/50 basis. Up to the 2017 timeframe, Hodge had always been forthcoming with financial information of the Company, and Chase and Hodge worked together to further the interests of the Company.

> 14. In early 2018, Chase began pressing Hodge for financial information on the Company. On April 26, 2018, Hodge sent a communication to Chase advising—for the first time—that Chase's interest in the

Company was an "economic benefit only" and not "legal ownership." He instructed Chase to cease telling third parties that he (Chase) was an owner of the Company, despite Hodge having mentioned to third parties on countless occasions that Chase was his "partner" and an "owner of Helping Hands." Hodge also asserted for the first time in 2018 that the Company was "owned 100% by a trust" and that Hodge had no ownership in Helping Hands himself. It was during this timeframe that Hodge began excluding Chase from the business.

15. On May 13, 2018, Hodge and Chase met in Washington, DC to try to resolve their issues regarding Helping Hands. During this meeting Hodge again assured Chase that each were "50/50 partners" in Helping Hands and each would continue to work to realize solid growth and an exit strategy for the Company in order to reap the rewards of their many years of sacrifice in building the Company. Following the meeting, Chase requested he be provided with all information and documents pertaining to Helping Hands since its inception and requested "complete and unlimited access" to Helping Hands' books and records on a go forward basis. Chase requested that this information be provided on or before June 1, 2018; however, said information was never provided by Hodge.

16. On January 11, 2019, Hodge forwarded "preliminary financials" to Chase, and Chase requested further documentation be provided to a forensic accountant. Hodge refused.

17. Throughout 2019, Chase tried to resolve the issues with Hodge. However, on September 26, 2019, Hodge sent an email to Chase wherein he offered to buyout Chase's "interests" in Helping Hands for $25,000.00 or otherwise threatened to "transfer" his money out of Helping Hands and sell the assets and wind down the Company. This offer was patently disingenuous, because the company has made and received millions of dollars in loans over the past two years.

18. Chase is now aware that Hodge has been involved in a hotly contested divorce and fears that Hodge may be wasting or transferring assets and revenues of the Company in an effort to hide the money from both Chase and Hodge's ex-wife. It has now come to light that Defendant Ryan Hodge has engaged in a consistent scheme of self-dealing, usurpation of corporate opportunities, and wasting of company assets.

19. All conditions precedent to Chase's recovery have occurred or have been waived, excused, or otherwise satisfied. All notices required have been provided or waived, excused, or otherwise satisfied.

Dkt. 54, at 3-4.

Defendants argue that the allegations in these paragraphs do not concern the wrongful acts that are the bases of Chase's claims— defined as the omission of Chase as a member of and from the operating documents of Helping Hands Capital, LLC. Dkt. 106, at 10. The undersigned agrees that these paragraphs do not plead facts that put the discovery rule squarely in issue, sufficient to put Defendants on notice of the discovery rule; but even if these pleadings were adequate to do so, Chase's reliance on the discovery rule fails on additional bases.

3.     Inherently undiscoverable

The parties dispute whether the discovery rule is available to Chase because the nature of his injuries is "inherently undiscoverable." Defendants assert that any injury to Chase based upon exclusion from the Helping Hands corporate documents was discoverable, and he cannot rely on the discovery rule because: (1) Chase was not listed on the Helping Hands Capital, LLC certificate of formation which was publicly filed; (2) Chase is listed as a member on the certificate of formation of TransAmerica Medical Assistance, LLC; (3) Chase had a prior dispute with former business associates where he alleged they breached an oral agreement to form and operate a business, which occurred prior to the formation of Helping Hands; (4) Chase had executed company agreements in the past for limited liability companies; (5) Chase received Form 1099 tax forms no later that February 2015; and (6) Chase never received a Schedule K-1 from Helping Hands, LLC. Dkt. 97, at 20-21. Thus,

Defendants assert, Chase either knew or should have known he was not a partner in Helping Hands.

Chase responds that: (1) a company is not required to list all its members on its corporate filings or amend its filings when ownership changes; (2) the filing with the Secretary of State did not constitute constructive notice to Chase as it did not rule out Chase as an owner, because companies are not required to disclose all their owners; (3) his unrelated dispute with others, and the fact that he had executed corporate documents in the past, have no relevance to this case; and (4) Chase's lack of receipt of a K-1 filing is legally irrelevant, because for all Chase knew, the company had elected to be taxed as a corporation, or Hodge was delinquent in filing K-1s. Dkt. 98, at 11-12.

Reviewing the summary judgment evidence, the undersigned finds that the alleged injuries in this case were not "inherently undiscoverable," and that in exercising reasonable diligence Chase knew or should have known about his status as a non-member of Helping Hands. Chase alleges that Hodge breached his fiduciary duty when he omitted him from the corporate formation documents. There is no dispute that these documents are publicly available, and Chase could have easily ascertained whether or not he was included on these documents once they were filed. *See Luck v. Alamo Printing Co.*, 190 S.W. 204, 204 (Tex. App.—San Antonio 1916, no writ) (cited by Defendants, holding publicly filed documents constitute constructive notice); *see also In re Cornerstone E & P Co., L.P.*, 436 B.R. 830, 862 (Bankr. N.D. Tex.) ("Under Texas law, '[a] person is charged with constructive notice of the actual

14

knowledge that could have been acquired by examining public records.')(quoting *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981)); *Pokorne Priv. Cap. Grp., LLC v. 21st Mortg. Corp.*, No. 13-06-575-CV, 2008 WL 963296, at *8 (Tex. App.—Corpus Christi Apr. 10, 2008, pet. denied) (filings with Secretary of State put party on constructive notice of record).

To the extent that Chase argues that a company is not required to list its members every time they change, this argument does not make sense in the context of Chase's claims, and in light of his assertion that Helping Hands had three purported initial owners, himself, Hodge, and Guedri.[2] Importantly, his breach of fiduciary claim is explicitly based on the failure to include him in the formation documents. He pleaded, "Despite Plaintiff trusting his friend, partner, and attorney to follow through with the parties' agreement, Hodge did not include Plaintiff or Guedri on the Company Agreement." Dkt. 54. The evidence supports that Chase is a sophisticated businessman, who not only had formed other companies, but had sued another former business associate for this same issue prior to the inception of Helping Hands.

Chase argues that he could not have determined who the legal owners of Helping Hands were without getting that information from Hodge, who was unwilling to provide it. Dkt. 98, at 11. However, the fact that Chase was paid as a 1099 contract employee, rather than receiving a K-1 tax form, is summary judgment evidence that

---

[2] *See* Texas Secretary of State, Form 205 "Certificate of Formation—Limited Liability Company," https://sos.state.tx.us/corp/forms/205_boc.pdf (requiring the filing entity to list the managers and initial members of the limited liability company along with their addresses).

exercising reasonable diligence, he knew or should have known he was not a member or owner of Helping Hands. In an LLC partnership, each owner should show their pro-rata share of partnership income, credits and deductions on a Schedule K-1.[3]

The summary judgment evidence establishes that Chase was issued Form 1099-MISC forms by Helping Hands, with income listed as "nonemployee compensation." Dkt. 97-2, at 1-2. This form is issued to independent contractors, to report nonemployee compensation.[4] And while Chase argues Helping Hands might have chosen to be taxed as a corporation, even then a C Corporation reports payments to investors through a 1099-DIV form.[5] And in the case of an S Corporation, each owner reports their pro-rata share of corporate income, credits and deductions on Schedule K-1.[6] Thus, even if Helping Hands had been taxed as a corporation, Chase would not have received a 1099-MISC. Chase also agreed in his deposition that a 1099 is typically sent to independent contractors and not business owners. Dkt. 97, at 21-22. Thus Chase knew or should have known from his receipt of the 1099-MISC form

---

[3] *See* Internal Revenue Service Online Guide, "LLC Filing as a Corporation or Partnership," https://www.irs.gov/businesses/small-businesses-self-employed/llc-filing-as-a-corporation-or-partnership#:~:text=If%20the%20LLC,of%20partnership%20earnings (last visited January 19, 2023).

[4] *See* Internal Revenue Service Online Guide, "Reporting Payments to Independent Contractor,"https://www.irs.gov/businesses/small-businesses-self-employed/reporting-payments-to-independent-contractors#:~:text=You%20made%20the,during%20the%20year (last visited January 19, 2023).

[5] *See id.*, "About Form 1099-DIV, Dividends and Distributions," https://www.irs.gov/forms-pubs/about-form-1099-div#:~:text=financial%20institutions%20to%20report%20dividends%20and%20other%20distributions%20to%20taxpayers (last visited January 19, 2023).

[6] *Id.*, "LLC Filing as a Corporation or Partnership," https://www.irs.gov/businesses/small-businesses-self-employed/llc-filing-as-a-corporation-or-partnership#:~:text=If%20the%20LLC%20is%20a%20corporation,Schedule%20K%2D1%20(Form%201120%2DS) (last visited January 19, 2023).

reporting his 2014 income from Helping Hands, mailed to him no later than January 31, 2014, that at that time he was not a member or owner of Helping Hands. This is especially true in light of the fact that Chase was a member of other limited liability companies, and aware of how monies were distributed to members. The undersigned finds that the failure to include Chase on the Helping Hands formation documents was not inherently undiscoverable.

Defendants also maintain that Chase cannot rely on the discovery rule as he previously admitted he was aware that Hodge formed Helping Hands Capital, LLC with himself as the sole member at the time of formation. In Chase's state court Petition, filed with this Court upon removal, he pleaded that:

> Hodge, as attorney for Chase and Guedri, **suggested that he form and own the entity** [a company to provide loans to litigants with said loans being secured by the future proceeds of any settlement]; however, he stated he would treat the company as a partnership in which each owned a third of the company. They agreed all profits would be distributed on this basis. Hodge then formed Helping Hands Capital, LLC, as a Texas limited liability company on March 28, 2013. Hodge was listed on the Certificate of Formation as the Managing Member of Helping Hands. The initial Operating Agreement of the Company listed Hodge as 100% owner of the 10,000 member units of the Company issued and outstanding as of March 28, 2013.

Dkt. 1-1, at 6 (emphasis added). Chase verified the facts set forth in this petition via sworn declaration. *Id.*, at 22-23.

Thus, the verified state court pleadings, which differ from his later-filed declaration, state that Chase was aware of the fact that he was not listed on the formation documents or operating agreement of Helping Hands when the company was formed, and did not legally own the company. This is also in conflict with Chase's First Amended Complaint, where he alleges that "despite Plaintiff trusting his friend,

partner, and attorney to follow through with the parties' agreement, Hodge did not include Plaintiff or Guedri on the Company Agreement." Dkt. 54, at 2. Chase further asserts, in his later-filed First Amended Complaint, "On April 26, 2018, Hodge sent a communication to Chase advising – for the first time – that Chase's interest in the Company was an '"economic benefit only' and 'not legal ownership.'" *Id.*, at 3. This statement is in direct conflict with Chase's earlier assertion that the parties knew Hodge was the sole owner of Helping Hands, LLC. As stated in Judge Austin's prior Report and Recommendation, inconsistent pleadings do not constitute unequivocable judicial admissions. Dkt. 72, at 19. However, as also noted by Judge Austin, "the allegation in the original complaint that Chase knew he was omitted from the formation documents is troubling," but does not mandate dismissal. Dkt. 72, at 19.

However, the Declaration of Mark Guedri, the other Helping Hands "partner" supports that Chase was aware or should have been aware that he was not included in the formation documents of Helping Hands Capital, LLC. Dkt. 97-4. Guedri explains that Guedri, Chase, and another individual, Terry Carden, formed HMR Funding, LLC, in February 2012. Hodge eventually entered an agreement with HMR Funding, LLC, that allowed him to earn-in a small 3% equity position in that company. Guedri explained that as Board of Manager Members and executives of HMR Funding, LLC, both he and Chase entered into employment agreements that precluded them from "diverting our work attention away from HMR Funding, LLC." *Id.*, at 5. He also explained that HMR Funding, LLC's Operating Agreement did not allow it to engage in the pre-settlement cash advance business of Helping Hands

Capital, LLC. And, in his Declaration, Chase does not actually state that he believed he was included on the formation documents. *See, e.g.*, Dkt. 98-1. The summary judgment evidence establishes that, despite his claims in his First Amended Complaint, Chase was aware or should have been aware he was not included on the formation documents of Helping Hands, LLC, and in fact, would have been in contravention of his employment agreement had he done so.

For all of these reasons, the Court finds that the discovery rule does not apply, and Chase's claims are therefore barred by the statute of limitations.

### 4. Fraudulent concealment

Chase also argues that the discovery rule should apply because Hodge pretended that Chase was an owner of Helping Hands, allowing him to weigh in on corporate matters and paying him a share of the profits. Dkt. 98, at 9. "[F]raudulent concealment estops the defendant from relying on the statute of limitations as an affirmative defense to [the] plaintiff's claim." *Comput. Assocs.*, 918 S.W.2d at 456 (alterations in original) (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983)). Defendants argue that Chase cannot argue fraudulent concealment because he failed to plead it.

Texas courts have recognized fraudulent concealment as an affirmative defense to limitations that the plaintiff must plead and prove. *Matter of Placid Oil Co.*, 932 F.2d 394, 399 (5th Cir. 1991); *Weaver v. Witt*, 561 S.W.2d 792, 793 (Tex. 1977) (per curiam); *FDIC v. Henderson*, 61 F.3d 421, 430 (5th Cir. 1995) (requiring that

fraudulent concealment be pleaded to be considered by a jury). Chase did not plead fraudulent concealment. Accordingly, this defense to limitations fails.

But even if he did, the doctrine "does not extend the limitations period indefinitely." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011). Instead, the limitations period is tolled only until "a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to the discovery of the concealed cause of action. Knowledge of such facts is in law equivalent to knowledge of the cause of action." *Borderlon*, 661 S.W.2d at 909.

Here, for the reasons explained above, Chase knew or should have known that he was not a member or owner of Helping Hands as early as 2015, when he received his first 1099-MISC. This was enough to make a reasonably prudent person inquire into whether he had a cause of action against Hodge for breach of fiduciary duty and breach of contract in setting up Helping Hands. *See Marcus & Millichap Real Estate Inv. Services of Nevada, Inc. v. Triex Texas Holdings, LLC*, No. 21-0913, 2023 WL 175434, at *4-5 (Tex. Jan. 13, 2023). Chase's fraudulent concealment assertion does not negate Defendants' statute of limitations defense.

### B.   Statute of Frauds

Defendants also argue that Chase's claims are barred by the statute of frauds. Chase argues the statute of frauds is inapplicable because the contract in issue could be performed within one year.

The purpose of the statute of frauds is to "remove uncertainty, prevent fraudulent claims, and reduce litigation" by requiring that certain agreements be in writing and signed by the parties. *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001). The statute of frauds is an affirmative defense in a breach of contract suit and renders a contract that falls within its purview unenforceable. Tex. Bus. & Com. Code § 26.01(a). Whether an agreement falls within the statute of frauds is a question of law. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 735 (Tex. 2018).

An agreement that cannot be completed within one year is not enforceable unless it is in writing and signed by the person to be charged. Tex. Bus. & Com. Code § 26.01(a), (b)(6); *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982) (per curiam). If the agreement is capable of being performed within one year, it is not precluded by the statute of frauds. *Hairston v. S. Methodist Univ.*, 441 S.W.3d 327, 334 (Tex. App.—Dallas 2013, pet. denied).

In determining whether an agreement is capable of being performed in one year, courts compare the date of the agreement to the date when the performance is to be completed. *Id.* This analysis is complicated somewhat when the agreement does not state the time for performance and does not indicate that it cannot be performed within a year. *Gano v. Jamail*, 678 S.W.2d 152, 153 (Tex. App.—Houston [14th Dist.] 1984, no writ). Although such agreements generally do not fall within the statute of frauds, *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775-76 (Tex. 1974), when the agreement cannot be performed within one year because of its terms or the nature of

21

the required acts, the statute of frauds applies, and the agreement must be in writing. *Niday*, 643 S.W.2d at 920.

Chase pleaded: "Chase and Hodge entered into a contract to combine their efforts to make loans to finance litigation and split the profits that came from those efforts." Dkt. 54, at ¶ 30. He pleads they entered into an oral contract as he has not supplied a written agreement. Where an oral contract omits the performance term, duration may properly be implied from extrinsic evidence. If that evidence conclusively proves that the contract cannot be completed within one year, the oral contract violates the statute of frauds as a matter of law. *Krueger v. Young*, 406 S.W.2d 751 (Tex. Civ. App.—Eastland 1966, writ ref'd n.r.e.).

In considering whether an oral agreement that does not explicitly mention a time for performance falls within the statute of frauds, the court must determine whether the parties intended to complete the agreement within a year. *Metromarketing Servs., Inc. v. HTT Headwear, Ltd.*, 15 S.W.3d 190, 195 (Tex. App.—Houston [14th Dist.] 2000, no pet.). In conducting this analysis, courts look to the intended performance of the agreement. *Id.* at 196 (noting "reasonable time" for performance is based on circumstances surrounding adoption of agreement, the situation of the parties, and the subject matter of the contract). The duration of the agreement "may properly be implied from extrinsic evidence." *Niday*, 643 S.W.2d at 920. If the evidence conclusively proves the alleged oral agreement cannot be completed within one year, the agreement violates the statute as a matter of law. *Id.*

There is no evidence either Chase or Hodge thought the litigation-funding agreement could be completed within one year, and all the available evidence indicated they anticipated it would take much longer to perform the object of the alleged agreement. Chase testified in his deposition that "Helping Hands was going to provide money for injured plaintiffs [for] what's called pre-settlement advances for living expenses." Dkt. 97-7, at 28:4-8, and 28:18-20. Hodge has submitted evidence that providing litigation funding to personal-injury plaintiffs is a years-long endeavor. Dkt. 97-1 and Dkt. 97-4. And the evidence shows that Helping Hands continued its litigation funding business for multiple years. *Id.* Also, the parties were partners in HMR, another litigation funding business, and were well aware that it would commonly take years to receive a return on funds advanced to personal injury claimants. Dkt. 97-1, at 1-2. Chase likewise testified in his declaration that he "worked for over 5 years to bring business to Helping Hands." Dkt. 98-1.

Chase asserts that the relevant agreement was to start Helping Hands and share the ownership equally, "which could be completed within a matter of weeks." *Id.* But, the relevant alleged agreement, as he acknowledged, included sharing profits from the litigation funding business, Dkt. 54, and the summary judgment evidence establishes this could not occur within a matter of weeks. Dkt. 97-7, Chase Declaration (acknowledging that from 2013 to 2016 Helping Hands focused on growth and redeployed profits into the company, with the long-term expectation the company would grow "for three to seven years"). The alleged agreement was not just to start a litigation funding business, but also to operate one and share profits, which could not

23

occur within one year. *See Yee v. Anji Techs., LLC*, No. 05-18-00662-CV, 2019 WL 2120290, at *5 (Tex. App.—Dallas May 15, 2019, no pet.) (finding the statute of frauds applied because the parties had conducted business for five years, the purpose of the partnership was to increase the defendant's existing client base and workforce, there was no evidence either party believed this could be accomplished within one year, and there was no evidence either party thought this purpose could be completed within one year, and all the available evidence indicated they anticipated it would take much longer to perform the partnership agreement). Accordingly, both the extrinsic evidence and the nature of the required acts establish that full performance of the partnership agreement could not be completed within one year. *See Chapman v. Arfeen*, No. 09-16-00272-CV, 2018 WL 4139001, at *11 (Tex. App.—Beaumont Aug. 30, 2018, pet. denied) (mem. op.) (concluding, based on terms of agreement, that parties did not contemplate undertaking would be completed within a year); *Gano*, 678 S.W.2d at 154 (concluding oral agreement between lawyers could not be performed in less than a year given the nature of the business and based on testimony by the lawyer seeking to enforce the agreement).

Therefore, the agreement Chase alleges falls within the statute of frauds and was required to be in writing in order to be enforceable.

Chase also pleads partial performance of the alleged agreement. "Under the partial performance exception to the statute of frauds, contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Berryman's S.*

*Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 192 (Tex. App.—Dallas 2013, pet. denied). However, the partial performance must be unequivocally referable to the agreement and corroborative of the fact that a contract actually was made. *Id.* at 193; *Holloway v. Dekkers*, 380 S.W.3d 315, 324 (Tex. App.—Dallas 2012, no pet.).

The performance a party relies on to remove an oral agreement from the statute of frauds "must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced." *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439-40 (Tex. App.—Dallas 2002, pet. denied). "If the evidence establishes that the party who performed the act that is alleged to be partial performance could have done so for some reason other than to fulfill obligations under the oral contract, the exception is unavailable." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 426-27 (Tex. 2015) (per curiam).

Chase relies on the fact that Helping Hands paid Chase and Guedri from the inception of the company until 2018, to show partial performance. Dkt. 97-4; Dkt. 97-98-1. In this case, the evidence supports that Hodge's "partial performance" by paying Chase and Guedri could also show that Hodge was running Helping Hands as an individually owned business and compensating Chase and Guedri as independent contractors. Thus, this exception to the statute of frauds is unavailable. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 426-27 (Tex. 2015) (per curiam) ("If the evidence establishes that the party who performed the act that is alleged to be partial performance could have done so for some reason other than to fulfill obligations under the oral contract, the exception is unavailable."). Accordingly, this

25

exception to the statute of frauds does not apply.[7] The undersigned finds that, along with limitations, Chase's claims are barred by the statute of frauds.

## C.   Indefiniteness

Defendants argue that to the extent Chase alleges a cause of action for breach of contract to share profits from a litigation funding business, other than a claim not barred by limitations or the statute of frauds, that claim fails for indefiniteness. Dkt. 97, at 31. Without citing any supporting authority, Chase asserts that this argument is not appropriate to address via a summary judgment motion. Dkt. 98, at 15.

Chase argues that the contract claim is sufficiently definite, arguing that they entered into an oral agreement: (1) to form a partnership to make pre-settlement medical advances to litigants; (2) that Hodge was to handle the administrative and legal matters including arranging for capital; (3) Guedri was to set up the software system to manage the business; (4) Chase was to handle business development and bring in clients; (5) the parties agreed to equally own the business and share profits; and (6) the equity interest was not contingent on performance. *Id.*, at 16-17.

A contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000); *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). The terms of an oral contract must be definite,

---

[7] The parties also argue about whether the statute of frauds applies to Chase's breach of fiduciary duty claims. However, those claims were limited by the Court's prior order, Dkt. 77, "to the claim of breach of fiduciary duty arising out of an alleged attorney-client relationship during the formation of Helping Hands." Since the undersigned has found this claim is barred by limitations, it need not address the applicability of the statute of frauds to this claim.

certain, and clear as to all essential terms, and if they are not, the oral contract fails for indefiniteness. *Southern v. Goetting*, 353 S.W.3d 295, 299-300 (Tex. App.—El Paso 2011, pet. denied). "[E]ssential or material terms are those that parties would reasonably regard as vitally important elements of their bargain." *Heartland Holdings, Inc. v. U.S. Trust Co. of Tex., N.A.*, 316 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2010, no pet.). When essential terms are missing, courts find no more than an agreement to agree. *Fiduciary Fin. Servs. of the Sw., Inc. v. Corilant Fin., L.P.*, 376 S.W.3d 253, 256 (Tex. App.—Dallas 2012, pet. denied). Whether an agreement fails for indefiniteness is a question of law for the court. *Argo Data Res. Corp. v. Shagrithaya*, 380 S.W.3d 249, 274 (Tex. App.—Dallas 2012, pet. denied).

Whether a partnership exists requires an examination of the totality of the circumstances. *Liserio v. Colt Oilfield Services, LLC*, No. SA-19-CV-01159-XR, 2022 WL 16542585, at *4 (W.D. Tex. Oct. 28, 2022). Texas law establishes five factors that indicate whether persons have created a partnership, although no one factor is decisive: (1) the right to receive a share of profits of the business; (2) an expression of intent to be partners in the business; (3) the right to participate in control of the business; (4) an agreement to share: (a) losses of the business, or (b) liability for claims by third parties against the business; and (5) agreement to contribute or contribution of money to the business. Tex. Bus. Orgs. Code § 152.052(a)(1)-(5). However, the receipt of, or right to receive, a share of profits as payment of wages or other compensation to an employee does not indicate that a person is a partner. *Id.*, § 152.052(b)(1)(B). Finally, a "representation or other conduct indicating that a

person is a partner in an existing partnership, if that is not the case, does not of itself make that person a partner in the partnership." Tex. Bus. Orgs. Code § 152.054.

Weighing these factors, the undersigned finds that to the extent Chase alleges a breach of contract not barred by limitations, this claim fails for indefiniteness, and Chase has failed to establish the existence of a partnership. In this case, the summary judgment evidence supports that Chase did not have a right to control the business, and instead received periodic small payments. The right to control a business is the right to make executive decisions. *Ingram v. Deere*, 288 S.W.3d 886, 900 (Tex. 2009); *Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 712 (Tex. App.—Eastland 2019, pet. denied). This includes managing business operations, viewing and managing the books, writing checks, and controlling assets. *Ingram*, 288 S.W.3d at 901-02 (collecting cases). The summary judgment evidence establishes that Chase did not have access to the books, did not control assets, and that he received checks from Hodge. Dkt. 97-1.

Moreover, an agreement to contribute money or property to the business is indicative of a partnership. Tex. Bus. Orgs. Code § 152.052(a)(5). Chase declares that Hodge was "to arrange for the company to have capital." Dkt. 98-1, at 2. Hodge declares that "I was the only one who provided any capital to start the company." Dkt. 97-1, at 3. Chase has not offered any controverting evidence that he contributed money or property. Chase's alleged contributions to Helping Hands were his labor, and the evidence supports he was paid as a contract employee. Dkt. 97-2. Moreover, he has offered no evidence distinguishing his value as an employee from the

28

contributions of a partner. *See Ingram*, 288 S.W.3d at 903 ("Employees may contribute to business endeavors by lending their time and reputation, but that is not a contribution to the venture indicative of a partnership interest."). Chase has offered no evidence of an affirmative agreement to share in the losses of the company, made no capital contributions to Helping Hands' formation, and he had no say in the company's executive operations. *See Liserio,* 2022 WL 16542585, at \*6. Chase's breach-of-contract claim to form a partnership fails for indefiniteness. *See Knowles v. Wright*, 288 S.W.3d 136, 144-46 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (finding contract too indefinite to support breach of contract claim where the appellants did not offer evidence of obligations or specific services owing under the agreement and did not address how shares were to be paid or costs calculated).

### D.    Remedies

Chase requests that the court appoint a receiver and claims that he is entitled to declaratory relief. Because the Court finds he cannot prevail on his claims, he is not entitled to the appointment of a receiver for Helping Hands Capital, LLC. Similarly, he is not entitled to declaratory relief.

## V.    CONCLUSION

The Court **GRANTS** Defendants' Motion for Summary Judgment, Dkt. 97, and **ENTERS** Final Judgment in favor of Defendants. The trial setting in this case is **CANCELED**, all other pending motions are **DISMISSED AS MOOT**, and this cause of action is **CLOSED**.

SIGNED January 24, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE